## ROSELL M. HOUGH

*v.*

## THE ÆTNA LIFE INSURANCE COMPANY.

1. PAYMENT—*subrogation.* A mere stranger or volunteer can not, by paying a debt for which another is bound, be subrogated to the creditor's rights in respect to the security given by the real debtor. But if the person who pays the debt, is compelled to pay, for the protection of his own interests and rights, then the substitution should be made.

2.  So where a general agent of an insurance company had appointed a local agent, and taken a bond from him in the name of the company, with sureties, conditioned that the local agent should pay over all moneys received by him, and the general agent paid to the company certain premiums received by the local agent, but not accounted for by him, it was *held*, in a suit upon the bond thus given, in the name of the company, for the use of the general agent, that inasmuch as the latter had the appointment of the local agents, and was bound, not only by contract with the company, but in order to maintain his position, to pay over all moneys received through local agents, his settlement with the company of the amount of the defalcation of the principal in the bond, before suit brought, did not operate to discharge the bond, but he had the right to be subrogated to the rights of the company in respect thereto.

3.  NOTICE *to surety—whether required.*  In such case, the surety in the bond, and his principal, being equally and primarily liable to the obligee, no notice to the surety of the defalcation of his principal, was necessary in order to fix the liability upon the bond.

4.  SURRENDER *of securities—whether necessary.*  The principal in the bond, the local agent, having given his promissory notes to the general agent for the amount of his defalcation, they should have been surrendered on the trial of the suit on the bond, or proof made that they had been given up, in order that a judgment could be properly entered.

5.  PAYMENT—*by means of other securities.*  If the notes, however, had been received in actual payment of the defalcation of the maker, that would operate as a discharge of the liability on the bond.

APPEAL from the Superior Court of Chicago; the Hon. WILLIAM A. PORTER, Judge, presiding.

Messrs. WILSON & VALLETTE, for the appellant.

Messrs. BRACKETT, WAITE & DRISCOLL, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

Wallis, as principal, and appellant, as his surety, executed the bond sued on, with the condition annexed, that Wallis, as a local agent of the company, would pay over all moneys received by him, less his commissions.

Raymond, for whose benefit the suit was brought, was the general agent of the insurance company, and, by his contract, was bound to pay over all moneys received in the general

320          HOUGH *v.* ÆTNA LIFE INS. CO.          [Sept. T.,

Opinion of the Court.

management of the affairs of the company; and had paid, before suit, the amount of the defalcation of Wallis, who was bound to make monthly returns; and when he failed to pay the money, he gave to Raymond promissory notes to be paid within a few days. These notes had not been surrendered at the time of the trial.

Three questions arise:

*First.* Was the settlement of the delinquencies of the local agent, by the general agent, a payment and discharge of the bond, so as to prevent subrogation.

*Second.* Is the security released because no notice was given to him of the defalcation of the principal.

*Third.* Should the notes have been surrendered before judgment?

Raymond was not co-surety, and it can not properly be assumed that he paid the defalcation as such. Suretyship is an accessory agreement, by which one person binds himself for another already bound. Whereas the liability of the general agent was distinct from, and anterior to the liability of the obligors to the bond.

The principle of subrogation has special application to the facts of this case.

The rule is, that if the person who pays the debt, is compelled to pay, for the protection of his own interests and rights, then the substitution should be made. A mere stranger or volunteer can not thus be subrogated to the creditor's rights.

By the terms of the agency, the principal agent was responsible for all premiums. This liability arose, not only by contract, but from his relation to the company, and to the local agents, and his right to appoint them. His reputation was involved, and his position could alone be maintained by the regular monthly payment of all sums received by the local agents. He was compelled to pay, not only by agreement prior to the date of the bond, but for the protection of his own rights.

The obligation, then, of the general agent to the company, was wholly independent of the obligation of the local agents.

In the payment of the defalcations of the local agent, the general agent only discharged his own liability. He only complied with his own agreement, for the purpose of maintaining his position.

He had the general management of the affairs of the company; upon him rested the entire responsibility; to him alone did the company look for the payment of premiums, and the local agent was his appointee. He, therefore, acted under compulsion, in the payment of the premiums.

Such payment was the mere performance of a duty, the fulfillment of an agreement on the part of the general agent, and should not be regarded as an absolute payment of the bond. There was nothing voluntary about it, and we can not presume that it was intended by the one party, or accepted by the other, as a satisfaction of the bond.

We think the payment should only be considered as a discharge of the general agent, and not a discharge of the bond. Such, evidently, was the intention. The contrary construction would make the act of the party operate directly opposite to the intention of the general agent, and to justice. The acceptance too, was not in satisfaction of the bond. This never could have entered into the minds of the parties. Looking at all the facts, the duty and contract of the principal agent to make regular monthly settlements, the fact that no allusion was made to the defalcation, and the strong probability that nothing was ever known by the company of the bond of the local agent, we must presume the payment of the premiums as intended and accepted entirely for the relief of the general agent, and not a release of the liability of the local agent.

The second objection, that notice was not given to the surety, can not be maintained.

So far as the rights and remedies of the insurance company are concerned, appellants and Wallis are both principals. Hough was primarily liable for any defalcation, and the company was not compelled to sue Wallis, before resorting to its remedy

against the surety. When two persons execute a bond, one as principal and the other as surety, one is equally bound to the obligee as the other.

In the cases to which reference has been made, there was a different relation between the parties. In *White* v. *Walker*, 31 Ill. 422, the question arose, as to the necessity of notice to a guarantor before the commencement of suit against him. The liability was secondary, dependent on the default of the lessee. Under such circumstances, this court held, that it was but reasonable the guarantor should have notice of the default before suit, so that he might make payment.

In the case of *Babcock* v. *Bryant*, 12 Pick. 133, the undertaking of the defendant was collateral only. The relation of guarantor and guarantee existed, and the court held, that in such case there must be reasonable notice.

In this case the surety did not agree to do something, upon the performance of some act of his principal. The undertaking of the surety was primary. He stipulated for no notice, but agreed to do a certain thing, in a certain specific event. This event, the failure of the principal to pay over all moneys collected, might have become known to him. He could easily have obtained the requisite information. Ordinary inquiry would have afforded him a knowledge of the conduct of the principal. The default did not lie within the peculiar knowledge of the opposite party. In such cases no notice is necessary before suit. In *Orme* v. *Young*, 3 E. C. S. 84, the plaintiff sued upon a bond executed by his son and ten securities, for £22,000, payable by instalments of £1000 half yearly, until £9000 should be paid, at which time the residue was to be paid. Default was made in the payment of the residue of the principal sum, and continued so until the principal became a bankrupt. No notice had been given to the sureties of this default. .

GIBBS, Ch. J., in delivering the opinion of the court, said : " A neglect to give notice to the surety, that the debtor had made default, does not discharge him. " See also, *Taylor* v. *Bank*

*of Kentucky,* 2 J. J. Marshall, 564; *Pittsburg, Fort Wayne & Chicago Railroad Company* v. *Shaeffer,* 59 *Penn. State R.* 350.

It was, however, error to render judgment on the bond without a surrender of the notes of Wallis. It is true, that Raymond terms them "cash tickets;" but the form given in the record, is that of an ordinary note for money.

It is wrong, in every view, to permit a creditor to retain notes, and also have judgment for the same indebtedness.

So far as appears from the record, these notes are still in the possession of Raymond, or he may have transferred them to third parties, and the debtor may be compelled to pay them.

They should be surrendered on the trial, or proof made that they had been given up, so that the debtor is released from his double liability.

If the notes had been received in actual payment of the defalcations, then the liability upon the bond is discharged. This fact should be inquired of by the jury.

The judgment is reversed and the cause remanded.

*Judgment reversed.*