## THE TOWN OF LYONS

*v.*

## EDWARD C. COOLEDGE *et al.*

1. JUDGMENT—*not void for irregularity or error.* The fact that a town is not given all the time allowed by law to plead to the action after proper service, does not render the judgment taken too soon a nullity, however erroneous and irregular it may be.

2. SAME—*laches in not procuring writ of error to reverse.* The fact that a town, against whom an erroneous judgment has been recovered, was prevented by accident, or otherwise, from suing out a writ of error for its reversal, is no defense to an application for a *mandamus* to compel the auditing of the judgment

89   529
39a  124

89   529
136  426
37a  313

89   529
51a  472

89   529
158  294

89   529
58a  539

89   529
59a  405

89   529
95a  1373

as a town charge, especially when the town might have procured a writ of error within the five years, but did not through negligence.

3. Town auditors—*compelled by mandamus to audit judgment.* A judgment against a town, under the township system, is made a town charge, and the board of town auditors have no discretion or power to refuse to audit and certify the amount necessary to satisfy the same, and if they refuse, they will be compelled to do so by *mandamus.*

4. Former adjudication—*not binding on one not a party.* A decree, at the suit of several tax-payers, perpetually enjoining the collection of a town tax levied to pay a demand or debt against the town, on the ground that the debt was fraudulently contracted, does not bind or conclude the holder of such demand, who is not made a party to the suit, and who afterwards obtains judgment against the town. If such a decree affected such party, it should have been interposed in the suit at law in which such judgment was obtained.

5. Same—*conclusive as to legal defenses that might have been made.* A town can not go behind a judgment rendered against it and question the sufficiency of the cause of action upon which it was predicated, in a collateral proceeding, as, on *mandamus* to compel the town auditors to audit the same as a town charge.

6. Where a bill to perpetually enjoin the collection of a judgment, upon the ground it was recovered through collusion and fraud, is dismissed for want of equity, it constitutes a complete bar to the same defense interposed to a proceeding to enforce the auditing and payment of the judgment, and the reasons assigned for the decision dismissing the bill are wholly immaterial.

Appeal from the Circuit Court of Cook county; the Hon. John G. Rogers, Judge, presiding.

This was a petition for *mandamus,* filed in the circuit court of Cook county, to compel the board of auditors of the town of Lyons to audit and certify the amount due on a certain judgment, recovered by appellees against the town, in the Superior Court, on the 7th day of July, 1870, for $6749 and costs of suit.

The answer to the petition admitted the recovery of said judgment; that petitioners applied to the board of auditors and furnished a statement of said judgment, and requested the board to audit the same as a town charge, and that the board refused to do so, on account of the unjust and fraudulent character of the claim, from facts within their own knowledge,

and from evidence produced before them while sitting as such board of auditors; that such evidence proved to the satisfaction of said board, and the facts are, that said judgment was recovered by fraudulent collusion between said petitioners and Alfred Ward, supervisor of the town; that the claim of petitioners arose out of a contract made secretly and by fraudulent collusion between petitioners and the commissioners of highways of said town, for macadamizing a half mile of street, for $9000, being three times the actual cost or value of the work, and that said commissioners and Ward were interested, by collusion with petitioners, in the proceeds of said contract; that the commissioners of highways had no legal authority to make such contract; that they had appropriated and expended all the money they were authorized to raise, and that had been raised, or was at the disposal of said town, or of said commissioners, for road purposes in said town, during the term of office of said commissioners; that Ward paid, out of moneys of the town, the difference between the amount of said judgment and the contract price, and also paid $500 on the judgment to petitioners, through such fraudulent combination and collusion; that before commencement of suit on which said judgment was recovered, to-wit, in 1869, said claim of petitioners was included in the town charges reported by the town clerk to said supervisor, Ward, to be levied as a part of the town taxes for 1869, and the whole amount, to-wit, $9000, was returned to the board of supervisors of the county, by Ward, with other town taxes for 1869, and was included in the tax levy, and entered on the collector's book for that year; that the collector received his book, with the usual warrant, in December, 1869, and was proceeding to collect the taxes, when, in January, 1870, in the Superior Court, John Wentworth and other large tax-payers in said town filed a bill in chancery, praying for an injunction against the collection of said town tax, by reason of the fraudulent and illegal character of petitioners' claim, as aforesaid; that Ward, supervisor, and the collector, appeared in said suit by counsel, and

answered the bill, and on final hearing, in April, 1870, an injunction was granted and made perpetual, in said cause, against the collection of said town tax, on account of the unjust, fraudulent and illegal claim of petitioners, included therein; that said suit at law was then commenced by petitioners against the town, and Ward, as supervisor, willfully, and by fraudulent collusion with plaintiffs, permitted said judgment to be entered by default, although he well knew that the claim was fraudulent and void against the town, and could not be enforced, in law or equity, if contested; that Ward has departed this life, and his estate is insolvent, and the town has no remedy for his default or neglect in not attending to the interests of the town in said suit, or for the wrongful payment of moneys by him to petitioners.

The replication to the answer averred, that after the rendition of said judgment, to-wit, in October, 1872, said town filed a bill in chancery, in said Superior Court, against petitioners, and therein claimed the several grievances, and especially the fraud, collusion and conspiracy set up in the foregoing answer, and prayed for an injunction against said judgment; that answer and replication were filed, and the cause heard, and bill dismissed for want of equity March 1, 1875. And no other proceedings were ever taken to set aside or reverse said judgment, and the same remains a proper town charge, and should be audited, etc.

The rejoinder to the replication averred, that in said action in said replication mentioned, it was found and adjudged by the court that the town had a remedy at law by prosecution of a writ of error from said judgment to the Supreme Court, upon the ground that said judgment was improperly rendered, without authority of law and before said town was in default, said town being entitled to thirty days to plead after service of summons, by statute, whereas its default was entered and judgment rendered on the thirteenth day after such service; and that said bill was dismissed only for the reason that

said town had a remedy at law, by prosecution of such writ of error.

Defendants further averred, that all the records and files of court, in said cause, wherein said judgment was rendered, were destroyed by fire, Oct. 8 and 9, 1871, and had not been restored at the date of rendering the decree in said chancery suit; that immediately after the termination of said chancery suit, to-wit, April 20, 1875, the town filed its petition in said Superior Court, wherein petitioners were made defendants, to have the record of said judgment restored according to law; that summons was duly issued, and returned May 5, 1875, served on Moody and Leitch, Cooledge not found; that *alias* summons was duly issued against Cooledge, to the next term of court, and returned not found, and that service could not be had on him, and his attorney refused to enter his appearance; and because no service could be had on Cooledge before the expiration of five years after rendition of judgment, the town was unable to procure the restoration of the record in time to prosecute a writ of error from the Supreme Court thereon.

A general demurrer to said rejoinder was sustained by the court, and defendants abiding by their pleading, judgment was rendered for petitioners, and a peremptory *mandamus* ordered, requiring the board of auditors to audit and certify the amount of said judgment and interest, less the sum of $500 paid thereon by the town, as a town charge, to the board of county commissioners of Cook county.

The town of Lyons, one of the defendants in said *mandamus* proceedings, appealed to this court.

Mr. GEORGE SCOVILLE, for the appellant.

Mr. ALLAN C. STORY, for the appellees.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The judgment recovered by the appellees, in 1870, against the town of Lyons, in the Superior Court of Cook county,

though irregular, was not void. Process had been issued, and served upon the supervisor of the town, as required by the act of 1861, and from the date of such service the court had such jurisdiction of the defendant that its subsequent proceedings were not void, however erroneous they may have been. It is probable the judgment by default would have been reversed on error or appeal, but the mere fact the defendant was not allowed all the time given him by law to plead to the action does not so vitiate the judgment as to make it a nullity and subject to collateral attack.

In *Whitwell* v. *Barbier*, 7 Cal. 63, it is said: "The true test is, whether the omission complained of is of the substance of the act required to be performed. If of the substance, then the judgment is a nullity; if of form, only an irregularity. In the case before us, the judgment is attacked collaterally, upon the ground that the defendant, although served with process, was not given the time allowed by statute to appear and answer. The defendant having been summoned to appear on a day certain, it can not be said that the court had no jurisdiction of the person, so as to make its judgment a nullity." See, also, *Voorhees* v. *The Bank*, 10 Peters, 468; *Smith* v. *Bradley*, 6 Smedes & Marshall, 485; and *Mooney* v. *Maas*, 22 Iowa, 380.

It is claimed, the board of town auditors, when called upon to audit a judgment recovered against the town, act in a judicial or deliberative capacity, and that the writ of *mandamus* will only lie to compel the board to proceed and pass upon the question of the justice of the demand, according to their best judgment. This claim is wholly inadmissible, and involves an absurdity. It is plain, both from the statute and from the reason of the case, the board can have no discretion or power to refuse to audit a valid judgment against the town. The forty-fifth section of the Township Organization law of 1874, which is a re-enactment of a section to be found in the act of 1861, provides that whenever any controversy or cause of action shall exist between any town and an individual, proceed-

ings may be had, either at law or in equity, for the purpose of trying and finally settling such controversy, and the judgment or decree therein shall have the like effect as in other suits or proceedings of a similar kind between individuals and corporations. By section fifty of the same act judgments recovered against a town are made a town charge, and by subsequent sections it is made the duty of the board to audit and certify such claims as are town charges, and it is expressly provided that the moneys necessary to defray the town charges of each town shall be levied on the taxable property in such town. It would, indeed, be a strange procedure for a party to a suit to pass in review upon the justice of the judgment recovered against him by the solemn adjudication of a court; and if boards of town auditors have such discretionary power, it is difficult to perceive how judgment against towns can have like effect as judgments obtained in other suits of a similar kind between individuals and corporations.

*Mandamus* is the proper remedy for enforcing the judgment against the town, by compelling the board of auditors to audit and certify the amount necessary to satisfy the judgment, which is declared by the law to be a town charge, so that the same may be included in the amount of moneys to be levied on the taxable property in the town, and when collected, paid to the persons to whom it has been adjudged. *The People ex rel.* v. *City of Cairo,* 50 Ill. 155; *City of Olney* v. *Harvey,* ibid. 454; *Rogers* v. *The People ex rel.* 68 id. 154; *Peoria Co.* v. *Gordon,* 82 id. 435.

The decree for a perpetual injunction, entered in April, 1870, in the chancery case prosecuted by Wentworth and other taxpayers, to restrain the collection of the town taxes of 1869, is not *res adjudicata* so far as the appellees are concerned, for they were not parties to that litigation. It was *res inter alios acta,* and the result reached in no way affects or concludes them. Besides, that decree was entered before the suit was commenced in which the judgment under consideration was rendered, and the scope of the bill was only to enjoin the col-

536          TOWN OF LYONS *v.* COOLEDGE *et al.*     [Sept. T.

Opinion of the Court.

lection of the tax levy of 1869 ; and if it could have been used at all, which we do not admit, it should have been urged in the action in which the judgment against the town was rendered. The town can not, in this collateral proceeding, go behind the judgment and question the sufficiency of the cause of action upon which it was predicated.

We deem, then, that portion of the answer setting up these injunction proceedings as wholly immaterial. The only substantial defense disclosed by the answer is, that the judgment was procured by fraud, collusion and conspiracy. The petitioners replied, that after the rendition of the judgment the town filed a bill in chancery against them to impeach the judgment for the very fraud set up in the answer; that issues were made up on such bill and the cause heard, and the bill dismissed for want of equity. The replication presented a complete bar to the proposed defense. If the court had found that the judgment was fraudulent, as charged in the bill, that was enough to set it aside in chancery and justify a perpetual injunction against its collection. It is the policy of the law to give to every one his day in court, but it is equally its policy not to encourage litigation. Where a controversy has been once decided by a court of competent jurisdiction, it can not again be brought into litigation between the same parties.

The demurrer was properly sustained to the rejoinder filed to the replication. It was incompetent to plead the reasons that induced the chancellor to dismiss the bill. The fraud alleged was involved in the cause submitted for decision, and we must presume that if it had been satisfactorily established the court would have so found and decreed. The fact that the court did decide, and the results of that decision are the matters that are material, the reasons given by the court in arriving at the conclusion reached are wholly immaterial. The averments in the rejoinder, in reference to the destruction by fire, in October, 1871, of the files and records in the cause wherein the judgment against the town was rendered, and the inability to serve a summons on Cooledge, in the proceedings

instituted to restore the record, are also immaterial. The statute allowed five years for suing out a writ of error, and if the town was prevented by accident, or otherwise, from suing out such writ, it was simply a misfortune, but it did not change the law. But the town, by its own showing, was guilty of *laches.* There was a period of about fifteen months after judgment, and before the fire, in which the writ might have been prosecuted and the record obtained. Then the petition to restore the record was not filed until April 20, 1875, and no excuse is given for not even then getting service on Cooledge by publication, under the provisions of the Burnt Records act. Moreover the writ might have been issued, and the case continued in this court until the record was restored and certified. If, as is urged, an unjust claim has been imposed upon the town, it has been through its own gross negligence or that of its officers and agents.

We find no error in the record, and the judgment of the circuit court must be affirmed.

*Judgment affirmed.*