THE BANK OF ANTIGO

*v.*

THE UNION TRUST COMPANY.

*Filed at Ottawa March 31, 1894.*

1. CONTRACT—*rescission in part.* As a general rule, when a party wishes to rescind an entire contract he must do so *in toto*, or not at all. But this is a rule of construction based upon the intention of the parties to the contract, and not a rule of law controlling that intention.

2. A, being desirous of raising money, procured his bankers to discount three notes he held on B, two for $3000 each and the last for $5430, and the proceeds were placed by the bank to the credit of A. On the evening of the same day, the bankers, on learning of the failure of B, charged to A the amount of the large note, less the discount, and immediately informed A of that fact and also returned him that note: *Held,* that the rescission of the contract as to the large note might be acquiesced in by A, and that the failure of A to object showed an election to treat the rescission as being effectual.

3. Where the consideration is divisible, and the price can be apportioned, then if a distinct divisible portion of the consideration fails,

the price paid for such portion may be recovered back. In such case the purchaser may elect to take what can be delivered to him, and if the purchase money has been paid he may recover back the excess, or if there has been no payment, defend *pró tanto.*

4. SAME—*whether severable.* Where the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable.

5. BANK—*agent for collection—payment.* Where one bank receives a note from another bank for collection, the first bank will thereby become the agent of the other for that purpose, and unless such an agent is specially authorized so to do, he has no right to accept in payment of the debt anything in lieu of money. He has no power to receive a check in payment.

6. BANK CHECK—*liability of bank—notice.* The check of a depositor on his banker, delivered to another for value, transfers to the payee therein, and his assigns, so much of the deposit as the check calls for; and when presented to the bank for payment the banker becomes liable to the holder for the amount thereof, provided the drawer has, at the time, sufficient funds to pay it.

7. The drawing of a check by a depositor upon his banker operates as an assignment to the payee, as between the drawer and drawee. But in order to charge the bank with the amount of the check it is indispensable that the check be first presented to it for payment, or some other act done similar thereto.

8. A bank had, between the time of making a check on it and its presentation for payment, on deposit to the credit of the drawer of the check, funds sufficient to meet the check, but the bank had no notice of the existence of the check until presented for payment, and the deposit against which it was drawn having been reduced by proper charges and deductions, there was not enough left to pay the check : *Held,* that the check was rightfully dishonored.

APPEAL from the Appellate Court for the First District ;— heard in that court on appeal from the Circuit Court of Cook county ; the Hon. R. W. CLIFFORD, Judge, presiding.

On and prior to September 2, 1890, A. Weed & Co. were doing business at Ashland, Wisconsin, and that day delivered their check for $3000, drawn upon the appellee bank, to appellant, and took up a note owned by appellee, then due, against Hoxie & Mellor, theretofore sent to appellant by ap-

pellee for collection, and on which A. Weed & Co. were indorsers. The check was as follows:

"CHICAGO, *September 2, 1890.*
*"The Union Trust Company:*

"Pay to the order of Amos Baum, cashier, three thousand dollars.                                    A. WEED & Co."

The said Baum, cashier of the appellant bank, accepted the check as so much cash, cancelled the note, delivered it to A. Weed & Co., and remitted the amount, less three dollars charges, to appellee, by draft on appellant's correspondent, the Merchants' Bank of Chicago, which draft was duly paid, etc. The check was also sent to the Merchants' Bank of Chicago, by appellant, for collection, and presented to appellee for payment on September 4, 1890, and dishonored, whereupon due protest was made, etc.

On August 25, 1890, upon certain representations made by A. Weed & Co., appellee was to, and did on September 3 following, discount for them $11,249.65 of Hoxie & Mellor paper, the same being three notes, of $3000, $3000 and $5430, respectively. On September 2, A. Weed & Co. had to their credit on the books of appellee $809.25, and on that day and the following, prior to crediting their account with the proceeds of the discounted paper, had overdrawn their account to the amount of $5760.57, so that after deducting over-drafts a balance was left to their credit on appellee's books, at the close of business on September 3, of $5489.08. On the evening of this day appellee became aware of the failure of Hoxie & Mellor, and at the opening of business on the morning of September 4 charged back to A. Weed & Co. the $5430 note,— less discount, $85.69,—and returned it to them, with the following letter:

"CHICAGO, *September 4, 1890.*
*"Messrs. A. Weed & Co., Ashland, Wis.:*

"DEAR SIRS—Upon being informed yesterday that Messrs. Hoxie & Mellor had failed, we deducted the amount of the

note of $5430, less discount, $85.69—$5344.31—from your account, and herewith return the note.

  "Yours, respectfully,     G. M. WILSON, *Cashier.*"

—Thus leaving a balance to the credit of A. Weed & Co. of $144.77 at the time of the presentation of the check-for payment on that day. An action was brought by appellant, against appellee, on the check, in the circuit court of Cook county, and resulted in verdict and judgment for appellee. On appeal to the Appellate Court this judgment was affirmed, and plaintiff below prosecutes this further appeal.

 Messrs. FLOWER, SMITH & MUSGRAVE, for the appellant:

One can not rescind a contract and at the same time retain the consideration, in whole or in part, which he has received under it. He must rescind the contract *in toto,* or not at all. *Harzfeld* v. *Converse,* 105 Ill. 534; *Converse* v. *Harzfeld,* 11 Ill. App. 173; *Jennings* v. *Gage,* 13 Ill. 610; *Bowen* v. *Schuler,* 41 id. 192; *Lovington* v. *Short,* 77 id. 587; *Kellogg* v. *Turpie,* 93 id. 265; *Morse* v. *Brackett,* 98 Mass. 205; *Mansfield* v. *Trigg,* 113 id. 350.

A check is a negotiable instrument, and subject to the same rules that govern ordinary bills of exchange in respect to the rights of the holder. 2 Daniel on Neg. Inst. sec. 1652; *Bull* v. *Bank,* 123 U. S. 105.

A bank check, in this State, transfers the money of the drawer in the bank to the payee the moment the check is delivered, and from that moment it ceases to be the property of the drawer and belongs to the payee or his assignee. *Munn* v. *Burch,* 25 Ill. 35; *Insurance Co.* v. *Stanford,* 28 id. 168; *Bank* v. *Ogden,* 29 id. 248; *Bickford* v. *Bank,* 42 id. 238; *Brown* v. *Leckie,* 43 id. 497; *Bank* v. *Bank,* 68 id. 398; *Bank* v. *Bank,* 80 id. 212; *Bank* v. *Patton,* 109 id. 479; *Bank* v. *Banking Co.* 114 id. 483; *Shaffner* v. *Edgerton,* 13 Ill. App. 132; *Bank* v. *Ritzinger,* 20 id. 27; *McAllister* v. *Oberne,* 42 id. 287.

Messrs. GREEN, WILLETTS & ROBBINS, for the appellee:

Of the right to rescind a contract, and when entire, see Wharton on Contracts, sec. 748; *Converse* v. *Harzfeld,* 11 Ill. App. 173; *Harzfeld* v. *Converse,* 105 Ill. 534; *Hill* v. *Rewer,* 11 Metc. 268; *Cushing* v. *Rice,* 46 Me. 302; *Wooten* v. *Walters,* 110 N. C. 251; *Preston* v. *Spaulding,* 120 Ill. 208.

As to a checkholder's rights, see Daniell on Neg. Inst. sec. 1638; Morse on Banking, sec. 504; *Munn* v. *Burch,* 25 Ill. 21; *Bank* v. *Bank,* 68 id. 398; *Bank* v. *Jones,* 137 id. 634.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

It is contended that the contract between appellee and Weed & Co., under which the three notes of Mellor & Hoxie were discounted, was an entire contract, and that appellee had no right to rescind as to the $5430 note and retain the proceeds of the two $3000 notes. It is true, as stated by counsel for appellant, that the general rule is, that when a party wishes to rescind an entire contract he must rescind it *in toto,* or not at all. (*Harzfeld* v. *Converse,* 105 Ill. 534.) But it is not to be overlooked that this is a rule of construction, based upon the intention of the parties to the contract, and not a rule of law, controlling that intention. (2 Parsons on Contracts, *521.) Conceding that the discounting of the notes in question constituted a contract between appellee and Weed & Co., it does not appear from the record, nor is it claimed, that Weed & Co. have treated, or sought to treat, the contract as entire and indivisible. On the other hand, it does appear that the $5430 note was returned to them by appellee, with a letter informing them that, having heard of the failure of Hoxie & Mellor, the makers of the notes, the amount thereof had been deducted from their account, etc. Weed & Co., on September 6, 1890, sent this note back to appellee, who, on the 8th, again returned it to Weed & Co., who, it seems, retained it. The letter of Weed & Co. of the 6th, or their purpose in returning the note, is not shown, nor does it appear that they

then or afterward asserted or undertook to assert, under the contract, any right against appellee. In the absence of any proof to the contrary, it may, we think, be said that Weed &. Co., by their silence, have themselves elected to treat the contract rescinded as to the $5430 note. If A. Weed & Co. have acquiesced in the rescission of the contract as to the $5430 note by appellee, it can not be, in the logic of things, that appellant can accede to any greater rights under the contract than A. Weed & Co., who, as we have seen, in the absence of countervailing proof on that question, have elected to acquiesce in the rescission. Appellant being under no constraint, in order to protect its own interests or rights, to pay the debt of A. Weed & Co. to appellee, but having, as will be seen, paid the same voluntarily, could not be subrogated to the rights of A. Weed & Co. in the premises. *Hough* v. *Ætna Ins. Co.* 57 Ill. 318; *Young* v. *Morgan,* 89 id. 199; *Beaver* v. *Slanker,* 94 id. 175.

But were the foregoing considerations not warranted by this record, we think, under the facts in this case, that the discounting of the notes constituted an apportionable contract. The record shows that in its letter of September 1, 1890, (in reply to one from A. Weed & Co., containing the proposition for discounting $15,000 of Hoxie & Mellor paper,) appellee said that it could "use, say, $10,000 of the paper" referred to, "from September 1st to 4th," and that under this arrangement the three separate notes above mentioned were discounted by appellee. It is not contended that appellee had not the right, had the integrity of the notes, at the time, been questionable, to have refused to discount any or all of them. Each note constituted, in and of itself, a separate and independent contract, upon a distinct consideration, and the books of the bank show that they were discounted as separate and distinct entities.

The rule as laid down by Parsons (vol. 2, p. *517,) is: "If the part to be performed by one party consists of several dis-

tinct and separate items, and the price to be paid by the other
is apportioned to each item to be performed, or is left to be
implied by law, such a contract will generally be held to be
severable." And Wharton (sec. 748, Law of Contracts,) says:
"When a consideration is divisible and the price can be ap-
portioned, then, if a distinct divisible portion of the consider-
ation fails, the price paid for such portion can be recovered
back," and that "in cases    *    *    *    in which the considera-
tion is divisible, the purchaser may elect to take what can be
delivered to him, and in such case, if the purchase money has
been paid, he can recover back the excess, or, if there has been
no payment, defend *pro tanto*." (See cases in notes.)    In
*Young, etc. Co.* v. *Wakefield,* 121 Mass. 91, where the action
was on account for certain india rubber goods sold, and the
price of each article, and discount from the gross sum, were
stated in the account, the court, in passing upon the question
of whether the contract was entire or divisible, said: "We do
not deem this contract to have been an entire one.    That a
contract should be of that character, it is not sufficient, merely,
that the subjects of purchase are included in the same instru-
ment of conveyance.    If but one consideration is paid for all
the articles, so that it is not possible to determine the amount
of consideration paid for each, the contract is entire.    (*Miner*
v. *Bradley,* 22 Pick. 457.)    *    *    *    When many different
articles are bought at the same time, for distinct prices, even
if they are articles of the same general description, so that a
warranty that they are all of a particular quality would apply
to each, the contract is not entire, but is, in effect, a separate
contract for each article sold.    *Johnson* v. *Johnson,* 3 B. &
P. 162; *Miner* v. *Bradley, supra*."    To the same effect is the
doctrine stated in *Wooten* v. *Walters,* 110 N. C. 251, where
the sale was of a stock of merchandise and land.    It was
there said, that "though a number of things be bought to-
gether without fixing an entire price for the whole, but the
price of each article is to be ascertained by a rate or measure

as to the several articles, or when, the things being of different kinds, though a total price is named but a certain price is affixed to each thing, the contract in such cases may be treated as a separate contract for each article, although they all be included in one instrument of conveyance or by one contract,"—citing *Johnson* v. *Johnson,* and *Miner* v. *Bradley, supra.* See, also, *Hill* v. *Remee,* 11 Metc. 268; *Cushing* v. *Rice,* 46 Me. 302; *Preston* v. *Spaulding,* 120 Ill. 208.

We are, however, referred by counsel for appellant to the case of *Harzfeld* v. *Converse, supra,* as maintaining a contrary view. This is a misapprehension. This case falls clearly within the rule announced in the Massachusetts and other cases, that where "the purchase is of goods, as a particular lot, * * * or the number of barrels in which the goods are packed, the contract is held to be entire." *(Young, etc. Co.* v. *Wakefield, supra,* and cases therein collated.) Moreover, at the time of the discounting of said notes, Weed & Co. had overdrawn their account with appellee $5760.57. By the judgments of the circuit and Appellate Courts the controverted question of fact as to fraud on the part of Weed & Co. in the transaction is conclusively settled, and that such fraud was consummated before the payment of Weed & Co.'s overdrafts. This being so, appellee would be excused from surrendering up to Weed & Co. the two $3000 notes. *(Preston* v. *Spaulding, supra,* and cases cited.) We are therefore of opinion that appellee had the right to rescind the contract as it did, by returning to Weed & Co. the $5430 note, and charging the same back to their account.

It is also insisted, that although appellee had the right to partially rescind the contract as against Weed & Co., it could not legally exercise such right as against appellant, it being a *bona fide* holder of the $3000 check in question, drawn by Weed & Co. on appellee. It appears that about September 2, 1890, appellee sent to appellant, for collection and return, a $3000 note then due, against Hoxie & Mellor, owned by ap-

pellee, and upon which Weed & Co. were indorsers. On that day Weed & Co. gave appellant the check in question, drawn on appellee for the amount of the note, which was at once cancelled by appellant and surrendered to Weed & Co. Appellant received the check as cash, and remitted the proceeds, less charges, to appellee, by draft on the Merchants' Bank of Chicago. This remittance was received by appellee on September 3, and paid. On the next day, about noon, the check sued on was presented to appellee for payment, which was refused. Appellee, in the meantime, between the receipt of the remittance and presentation of the check for payment, having become apprised of the business failure of Hoxie & Mellor and the fraud of Weed & Co., had charged back to Weed & Co.'s account, and returned to them, the said $5430 note,—less discount, $85.69,—leaving a balance to the credit of Weed & Co. of $144.77, only, when the check was presented. It is not shown or pretended that appellant, in making collection of said note, was authorized by appellee to receive in payment thereof anything but money. When appellant received the note from appellee for collection, it then and thereby became the agent of appellee for that purpose, and the law is well settled, that unless such an agent is specially authorized so to do he has no right to accept in payment of his principal's debt anything in lieu of money. *Mathews* v. *Hamilton,* 23 Ill. 470; *Ward* v. *Smith,* 7 Wall. 447; *Howard* v. *Chapman,* 4 Carr. & P. 508; Story on Prom. Notes, (7th ed.) secs. 115-389, and notes. Being authorized to receive money, only, the agent has no implied power to receive a check in payment. (*Hall* v. *Storrs,* 7 Wis. 253.) And where the collection agent, not being thereunto authorized, accepts in payment of his principal's demand a check or depreciated currency, and loss ensues thereby, he must bear it. *Ward* v. *Smith, supra;* Morse on Banking, 43-432; *Harlan* v. *Ely,* 68 Cal. 522.

But it is claimed that the drawing of the check by Weed & Co. on appellee operated as an assignment to appellant of so

much of the fund on deposit against which it was drawn as was necessary to pay it. As between the drawer and drawee this is doubtless correct. (*Union Nat. Bank* v. *Oceana County Bank,* 80 Ill. 212.) But in order to charge the bank with the amount, it is indispensable that the check be first presented to it for payment, or some other act done equivalent thereto. This rule was announced in the early case of *Munn* v. *Burch,* 25 Ill. 35, where it was held that the check of a depositor on his banker, delivered to another for value, transfers to the payee therein, and his assigns, so much of the deposit as the check calls for, and that when presented to the bank for payment the banker becomes liable to the holder for the amount thereof, provided the drawer has, at the time, sufficient funds on deposit to pay it, and this doctrine has been subsequently re-affirmed in numerous decided cases in this court, among which see *Chicago Marine and Fire Ins. Co.* v. *Stanford,* 28 Ill. 168; *Bickford* v. *First Nat. Bank,* 42 id. 238; *Chicago Fourth Nat. Bank* v. *City Nat. Bank,* 68 id. 398; *Metropolitan Nat. Bank* v. *Jones,* 137 id. 634. That appellee had, between the time of making the check and its presentation for payment, on deposit, to the credit of Weed & Co., funds sufficient to meet the check, can have no bearing on the question. Appellee had no notice of the existence of the check until presented for payment, and the deposit against which it was drawn having been, as we have seen, depleted, by proper charges and deductions, until only a meagre sum remained, there was no sufficient fund left on deposit out of which it could be paid, and the check was, therefore, rightfully dishonored.

Other errors are assigned which have been carefully considered, but in view of what has been said no useful purpose would be served by a discussion of them.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*