NATIONAL BANK OF BRUNSWICK V. THE COUNTY OF YANKTON. *

(*Opinion of the United States Supreme Court, 11 Otto, 129.*)

1. The Statute of Congress organizing a Territory within the jurisdiction of the United States is the fundamental law of such Territory, and as such binding upon the territorial authorities.

2. Subject to the limitations expressly or by implication imposed by the Constitution, Congress has full and complete authority over a Territory, and may directly legislate for the government thereof. It may declare a valid enactment of the territorial Legislature void or a void enactment valid, although it reserved in the organic act no such power.

3. Under the Statutes of Congress (12 Stat. 239 and 15 id. 300) the Legislative Assembly of Dakota meets biennially, and no one session thereof can exceed forty days. That assembly met Dec. 5, 1870, and after continuing in session every day, Sundays excepted, until Jan. 13, 1871, adjourned without day. The Acting Governor convened it April 5, 1871, when, after organizing, it passed, among other laws, one entitled "An Act to enable organized counties and townships to vote aid to any raiload, and to provide for payment of the same." In strict conformity to its provisions, the electors of a county voted to donate a specific sum to a certain railroad company. Congress, by an act approved May 27, 1872 (17 id. 162,) disapproved and annulled said territorial act, but provided that the vote of aid for the construction of the main stem of the road of the company should not be impaired, and that the company was a valid corporation. The company complied with the requirements of Congress by giving for the aid so voted an equal amount of stock to the county, and the latter issued its bonds therefor. In an action brought by a *bona fide* holder of them 'to recover certain installments of interest,—*Held*, that independently of the question of authority to convene that extra session, or of the validity of the laws enacted thereat, the bonds are binding on the county, inasmuch as the act of Congress is equivalent to a direct grant of power to issue them.

---

*This action was tried in the District Court of Yankton county, and involved precisely the same points decided in *Treadway v. Schnauber*, 1 Dak., 236, where will be found a full statement of the facts, with briefs and argument of counsel.

Upon the authority of that case judgment was entered for defendant in the District Court.

An appeal was taken to the Supreme Court of this Territory, and on August 15th, 1876, upon the same authority, no opinion being filed, the judgment of the District Court was affirmed. The case was then taken on error to the Supreme Court of the United States and there reversed, the Court delivering the above opinion, which it has been thought might with propriety be inserted in this volume to complete the history of the case.                    REPORTER.

*Error to the Supreme Court of Dakota Territory.*

THE facts are stated in the opinion of the Court.

*Mr. S. W. Packard* and *Mr. James Grant* for the plaintiff in error.

*Mr. Matt. H. Carpenter* and *Mr. James Coleman* for the defendant in error.

Mr. Chief Justice Waite delivered the opinion of the court.

By section 4 of the act to provide a temporary government for the Territory of Dakota, no one session of the Legislative Assembly shall exceed forty days (12 Stat. 239,) and in 1869 Congress declared that the sessions of all territorial legislative assemblies should be biennial. 15, id. 300. The members of the Legislative Assembly of Dakota met on the 5th of December, 1870, and continued in regular session on all days, except Sundays, until January 13, 1871, when they adjourned without day. The day of adjournment was called on the journals the fortieth day of the session, although there had been but thirty-five days of actual session for the transaction of business. On the 18th of April, 1871, the members of the Legislature elected the preceding fall again assembled at the call of the Acting Governor of the Territory. After organizing themselves as a Legislative Assembly and proceeding to legislate for the Territory, they passed among other acts, one entitled, " An Act to enable organized counties and townships to vote aid to any railroad and to provide for the payment of the same." Under this act the voters of Yankton county, on the 2d of September, 1871, voted to donate to the Dakota Southern Railroad company $200,000 in the bonds of the county. All the proceedings under which this vote was taken were conducted strictly according to the requirements of the law.

On the twenty-seventh day of May, 1872, the following act of Congress was approved and went into effect. 17 id. 162.

*" An Act in Relation to the Dakota Southern Railroad Company."*

" Be it enacted by the Senate and House of Representatives of the United

States of America in Congress assembled, that the act passed by the Legislative Assembly of the Territory of Dakota, and approved by the Governor on the twenty-first day of April, 1871, entitled, 'An Act to enable organized counties and townships to vote aid to any railroad, and to provide for the payment of the same ' be, and the same is hereby, disapproved and annulled, except in so far as herein otherwise provided. But the passage of this act shall not invalidate or impair the organization of the company heretofore organized for the construction of the Dakota Southern Railroad leading from Sioux City, Iowa, by way of Yankton, the capital of said Territory, to the west line of Bon Homme county, or any vote that has been or may be given by the counties of Union, Clay, Yankton, and Bon Homme, or any township granting aid to said railroad, or any subscription thereto, or anything authorized by and that may have been done in pursuance of the provisions of the aforesaid act of the Legislative Assembly of said Territory towards the construction and completion of said railroad, and the said Dakota Southern Railroad Company, as organized under and in conformity to the acts of the Legislative Assembly of said Territory, is hereby recognized and declared to be a legal and valid corporation; and the provisions of the act of the Legislative Assembly first aforesaid, so far as the same authorize, and for the purpose of validating any vote of aid and subscriptions to said company for the construction, completion, and equipment of the main stem of said railroad, between the termini aforesaid, are hereby declared to be and remain in full force, but no further, and for no other purpose whatsoever.

" SECTION 2. That for the purpose of enabling the said Dakota Southern Railroad Company to construct its road through the public lands between the termini aforesaid, the right of way through the public lands is hereby granted to said company to the extent of one hundred feet in width on each side of said road: *Provided*, that nothing in this act shall relieve said Dakota Southern Railroad Company from constructing and completing said railroad in accordance with the conditions and stipulations under which the citizens of the counties therein named voted aid to said railroad in accordance with the laws of said Territory, approved April 21, 1871: *Provided further*, that said Dakota Southern Railroad Company shall issue to the respective counties and townships voting aid to said railroad paid-up certificates of stock, in the same in amounts equal to the sums voted by the respective counties and townships."

After the passage of this Act, the bonds voted were delivered by the county commissioners to the railroad company, and stock in the company for an equal amount was issued to the county. The First National Bank of Brunswick, Maine, the *bona fide* holder and owner of ten of these bonds, amounting in the aggregate to $10,000, brought this suit against the county to recover three instalments of interest. The defense was that there was no law authorizing the issue of the bonds, and, as a consequence, that the county was not bound for the payment of either principal or interest. Upon the trial of the cause, the facts were found substantially as already

stated, and a judgment was rendered by the District Court of the Territory in favor of the county.    This judgment was afterwards affirmed by the Supreme Court, and thereupon the bank brought the case here by writ of error.

We do not consider it necessary to decide whether the Governor of Dakota had authority to call an extra session of the Legislative Assembly, nor whether a law passed at such a session or after the limited term of forty days had expired would be valid, because, as we think, the Act of May 27, 1872, is equivalent to a direct grant of power by Congress to the county to issue the bonds in dispute. It is certainly now too late to doubt the power of Congress to govern the territories.    There have been some differences of opinion as to the particular clause of the Constitution from which the power is derived, but that it exists has always been conceded.    The act to adapt the ordinance to provide for the government of the territory northwest of the river Ohio to the requirements of the Constitution (1 Stat. 50) is chapter 8 of the first session of the first Congress, and the ordinance itself was in force under the confederation when the Constitution went into effect.    All territory within the jurisdiction of the United States not included in any State must necessarily be governed by or under the authority of Congress.    The territories are but political subdivisions of the outlying dominion of the United States.    Their relation to the general government is much the same as that which counties bear to the respective States, and Congress may legislate for them as a State does for its municipal organizations.    The Organic law of a territory takes the place of a constitution as the fundamental law of the local government. It is obligatory on and binds the territorial authorities; but Congress is supreme, and for the purposes of this department of its governmental authority has all the powers of the people of the United States, except such as have been expressly or by implication reserved in the prohibitions of the Constitution.

In the Organic Act of Dakota there was not an express reservation of power in Congress to amend the acts of the Territorial Legislature, nor was it necessary.    Such a power is an incident of sovereignty, and continues until granted away.    Congress may not only abrogate laws of the territorial legislatures, but it may itself legislate directly for the local government.    It may make a void

act of the Territorial Legislature valid, and a valid act void. In other words, it has full and complete legislative authority over the people of the territories and all the departments of the territorial governments. It may do for the territories what the people, under the Constitution of the United States, may do for the States.

Turning, then, to the particular Act of Congress now under consideration, we find that the attention of that body was in some way brought to the fact that the Legislative Assembly of Dakota had, on the 21st of April, 1871, passed an Act to enable organized counties and townships to vote aid to railroads. In addition to this, it was known that the Dakota Southern Railroad Company has been organized as a corporation under certain acts of the Territorial Legislative Assembly, and that votes had been taken under the aid act in some of the counties and townships granting aid to or authorizing subscriptions of stock in this corporation. It is clear that Congress disapproved the policy of the aid act, and was unwilling to have it go into general operation; but to the extent it could be made available for the construction and completion of the main stem of the Dakota Southern Railroad the contrary is distinctly manifested. The act as a whole was " disapproved and annulled," but in substance re-enacted by Congress " for the purpose of validating any vote of aid or subscription" to that company, but " for no other purpose whatever." A careful examination of the Statute leaves no doubt in our minds on this subject. To make it sure that the organization of the company was complete, the "Dakota Southern Railroad Company, as organized under and in conformity to the acts of the Legislative Assembly of said Territory," was " recognized and declared to be a legal and valid corporation." It is then in terms enacted that the provisions of the aid act, " so far as the same authorize, and for the purpose of validating any vote of aid and subscriptions to said company, for the construction, completion, and equipment of the main stem of said railroad,....are hereby declared to be and remain in full force." And again: " that said Dakota Southern Railroad Company shall issue to the respective counties and townships voting aid to said railroad, paid-up certificates of stock in the same in amounts equal to the sums voted by the respective counties and townships." In the light of these distinct and positive declarations

and enactments of Congress, it is impossible to bring our minds to any other conclusion than that, when the bonds now in controversy were put out, there existed full and complete legislative authority to bind the people of the county for their payment. No complaint is made of any irregularity in the proceedings under the law. The question in the case is one of power only. As we think, the vote of the people of the county was "validated" by Congress, and express authority given to issue the bonds for the purposes originally intended. The only change which Congress saw fit to make was to require the company to give stock in return for the donation as voted.

The judgment of the Supreme Court of the Territory will be reversed, and the cause remanded with instructions to reverse the judgment of the District Court, and direct a judgment for the plaintiff on the facts found for such amount as shall appear to be due on the coupons sued for; and it is so

ORDERED.

## MAY TERM, 1881.

PRESENT:

HON. PETER C. SHANNON, CHIEF JUSTICE.

HON. SANFORD A. HUDSON,

HON. GIDEON C. MOODY,  } ASSOCIATE JUSTICES.

HON. JEFFERSON P. KIDDER,