Downes v. Parshall.

DOWNES v. PARSHALL *et al.*

(April 27, 1891.)

TERRITORIES—CONSTITUTIONAL LAW—BANKRUPTCY —ASSIGNMENT FOR BENEFIT OF CREDITORS.

1. Const. U. S. art. 1, § 8, subd. 4, providing that congress shall have power to establish "uniform laws on the subject of bankruptcies throughout the United States," does not qualify the plenary legislative power of congress over the territories; and hence Rev. St. U. S. § 1851, providing that the "legislative power of every territory shall extend to all rightful subjects of legislation not inconsistent with the constitution and laws of the United States," authorized the legislature of Wyoming to pass Rev. St. Wyo. § 118, declaring that any creditor accepting a dividend from the property of an assignor shall release him from all further liability on the claim.

2. The provision in such act, requiring a release, is not in conflict with Rev. St. U. S. § 1925, providing that the legislature of Wyoming shall not pass any law impairing the rights of private property.

3. The statute does not require that the deed of assignment shall provide for the disposition of the dividends of those who refuse to accept them and release the assignor, and a failure to so provide does not convert an assignment under the statute to one at common law.

Error from district court, Laramie county.

Petition of one Downes for an order requiring one Parshall and another, assignee, to pay certain dividends from the assigned estate, without the execution of a release. The petition was denied, and petitioner brings error. Affirmed.

*J. F. Rowan, J. Q. Charles,* and *J. R. Smith,* for plaintiff in error. *Lacey & Van Devanter,* for defendants in error.

CONAWAY, J. Plaintiff in error filed his petition in the office of the clerk of the district court for Laramie county, July 17, 1890, praying an order of the court requiring and directing the defendant assignees to pay to plaintiff in error the dividend theretofore declared by them in the course of the administration of the estate of the said assignor, and such other dividends as might, from time to time, be lawfully declared and ordered, without the execution of the release of said assignor, as required by section 118, Rev. St. Wyo. 1887. On July 21, 1890, a final order was made in and by said district court, overruling and denying the prayer of said petition, to which final order plaintiff in error then and there excepted. He asks in this court the reversal of the final order.

The only question presented in the court below or in this court is the effect as to the plaintiff in error of said section 118, Rev. St. Wyo. It is urged that this section is in its nature and effect a bankrupt or insolvent law, and that the legislature of the territory of Wyoming had no power to pass a bankrupt or insolvent law. Without discussing the question as to how far this section 118 partakes of the nature of a bankrupt or insolvent law, and waiving the question as to what the effect would be upon the other portions of the assignment law if this section should be found invalid, we will consider the power or authority of the legislature to pass such a law. The argument of the plaintiff in error, stated briefly, is that the authority of the legislature of Wyoming territory was derived from congress; that congress could confer no greater power than it had itself; and that congress had no power or authority to pass a bankrupt or insolvent law for Wyoming territory. This argument rests upon the assumption, which is made as the basis of the argument, that the power of congress upon this subject is derived from and limited by subdivision 4 of section 8 of article 1 of the constitution of the United States, conferring upon congress power to establish "uniform laws on the subject of bankruptcies throughout the United States." As to this contention it is sufficient to say that the power of congress to legislate for the territories is not derived from nor limited by this or any other express provision or provisions of the constitution. As to the extent of this power the supreme court of the United States says: "All territory within the jurisdiction of the United States, not included in any state, must necessarily be governed by or under the authority of congress. Congress may not only abrogate laws of the territorial legislatures, but it may itself legislate directly for the local government. It may make a void act of the territorial legislature valid, and a valid act void. In other words, it has full and complete legislative authority over the people of the territories and all departments of the territorial governments. It may do for the territories what the people, under the constitution of the United States, may do for the states." National Bank v. County of Yankton, 101 U. S. 129. It is thus apparent that the doctrine that the general government is one of limited powers granted by the states, and enumerated in the express provisions of the constitution, or derived by necessary implication from

Downes v. Parshall.

such enumerated powers, however just and salutary, as applied to the states, has no application to the territories of the United States. The power of congress to legislate for the territories is not to be compared to nor measured by its power to legislate for the people of the states. It is not a power which was granted to the general government in the adoption of the constitution by the states. It is not one which was withheld by them. It is one which they never possessed, either to grant or to withhold. It is one of the essential and most important attributes of sovereignty; a sovereignty which no state ever possessed or claimed or attempted to exercise outside of its own boundaries. The source of this plenary power of legislation for the territories our courts have seldom, if ever, attempted to define. As to its existence, there is at this day no question. "Perhaps the power of governing a territory belonging to the United States, which has not, by becoming a state, acquired the means of self-government, may result necessarily from the facts that it is not within the jurisdiction of any particular state, and is within the power and jurisdiction of the United States. The right to govern may be the inevitable consequence of the right to acquire territory. Whichever may be the source from whence the power is derived, the possession of it is unquestioned. In legislating for them [the territories] congress exercises the combined power of the general and of a state government." Insurance Co. v. Canter, 1 Pet. 541. This language was commented upon and explained in the case of Dred Scott v. Sandford, but not so as to interfere with its application to cases such as the one at bar. "The distinction between federal and state jurisdictions under the constitution of the United States has no foundation in these territorial governments; and consequently no such distinction exists, either in respect to the jurisdiction of the courts or the subjects submitted to their cognizance. They are legislative governments, and their courts legislative courts; congress, in the exercise of its powers in the organization and government of the territories, combining the powers of both federal and state authorities. There is but one system of government or of laws within their limits, as neither is subject to constitutional provisions in respect to state and federal jurisdiction." Benner v. Porter, 9 How. 242.

It would seem that, beyond a doubt, the legislature of the territory of Wyoming had power and authority to pass the statute in question, including section 118, under the act of congress conferring legislative power extending "to all rightful subjects of legislation, not inconsistent with the constitution and laws of the United States," (Rev. St. U. S. § 1851,) unless the exercise of that power is subject to some other objection than the one now under consideration. It is claimed that such is the case. It is contended on behalf of the plaintiff in error that section 118 is within the congressional inhibition against the enactment of any law impairing the rights of private property. Id. § 1925. It may be that this language will include a law impairing the obligation of a contract, and that the principle contended for is correct; but it is not applicable, under the existing state of facts, to this case. The petitioner cannot claim and receive the advantages of the assignment law of Wyoming without subjecting himself to its conditions.

It is urged on behalf of the plaintiff in error that, admitting that the assignor might have made a statutory assignment, securing the benefit of the statutory provision for his release by creditors accepting dividends, still he has not done so, but he has made a common-law assignment, under which no release can be had, thus waiving his right to such release. A careful scrutiny of the instrument does not reveal wherein it is not a statutory assignment. No single provision of the statute seems to have been violated or disregarded. It is argued that it is not a statutory assignment because it does not provide for the disposition of the dividends of those who refuse to accept their dividends and release the assignor. The statute does not require that it should. It would be difficult for the assignment itself to provide for this without being open to the objection of making preferences or reserving benefits to the assignor, or else in some way establishing a trust not for the equal benefit of creditors, and therefore in violation of the statute. The release is a matter which the statute provides for, and not the assignment; a result which the statute causes to follow the execution of an assignment according to the statutory terms; a result which the assignor can secure only by making his assignment comply with the requirements of the statute. When he has done this,

Torrey v. Baldwin.

the law provides for all else. It is also urged that the absence of a provision in the assignment for the disposition of unaccepted dividends makes the instrument vague, uncertain, and inoperative. We do not think so. The courts will be at no loss as to how these dividends should be disposed of under the law. It is contended that to require a release as the condition of paying a dividend is to make the assignment one for the benefit of releasing creditors only, in violation of its terms. This view is entirely erroneous. In fact, all of these objections apply rather to the statute than to the assignment. The law declares any assignment void "which gives preference of one debt or class of debts over another." The legislature did not consider this inconsistent with the provision that any creditor accepting his dividend should "release the assignor from all further liability on the claim or claims on which said payment may be made." Neither will the courts so consider it. None of the proceeds of the assigned property can go to the assignor until all the debts are paid. If the law operates to prefer releasing creditors, it is not the fault of the assignor; and, if this is a defect in the law, it is one that the courts cannot remedy. It does not appear but that all may be paid. The statute secures to each creditor the right to participate in the benefits of the assignment on equal terms with every other creditor. The deed of assignment is in strict conformity with the statute, and both operate for the equal benefit of all creditors, and place them on an equal footing. Two cases are referred to by plaintiff in error as supporting his argument that the assignment is not a statutory one. They are In re Bird, 39 Minn. 520, 40 N. W. Rep. 827, followed by In re Fuller, 42 Minn. 22, 43 N. W. Rep. 486. When these cases were heard, the assignment law passed in 1876 was in force in Minnesota, and it did not provide for any release. There was also an insolvent law in force in that state, not in terms like our assignment law, which did provide for a release. It provided that the assignment might be made for the equal benefit of all creditors who should file releases of their claims. What was really decided was that the assignors had not brought themselves within the terms of the insolvent law. Were these cases in point, we should hesitate long before following them, even if the great weight of authority were not the other way. The

New Jersey courts, and the courts of a number of other states, whose statutes are more like ours than were those of Minnesota, uphold provisions similar to ours for the release of assigning debtors. We are able to decide this case in accordance both with the great weight of authority and with the plain and peremptory language of the statute. The order of the district court is affirmed.

GROESBECK, C. J., and MERRELL, J., concur.