(No. 22345.—

THE PEOPLE *ex rel.* Jay B. Morse, County Collector, Appellee, *vs.* E. R. ORVIS, Appellant.

*Opinion filed October 24, 1934—Rehearing denied Dec. 13, 1934.*

D. T. SMILEY, for appellant.

CHARLES E. MASON, State's Attorney, and OKEL S. FUQUA, (CHARLES E. JACK, EDWARD P. MADIGAN, and RICHARD F. LOCKE, of counsel,) for appellee.

Mr. CHIEF JUSTICE JONES delivered the opinion of the court:

The county court of Lake county overruled the objections of E. R. Orvis, appellant, to certain taxes levied on his property for the year 1932 on account of bonds issued without a vote of the people by the board of education of Grant Community High School District No. 124, in the sum of $55,000. Judgment for sale was entered and Orvis has prosecuted an appeal to this court.

The only question presented is the validity of the bond issue. In December, 1929, a special election was held in the district to vote upon three propositions—*i. e.,* building a school house, purchasing a site and issuing bonds in the amount of $72,000. All three propositions carried and the bonds were issued. A site was purchased and contracts were let for the construction of a school house, including part of the equipment. The board of education ascertained that the proceeds of the $72,000 bond issue would not be sufficient to complete the building and equipment, and after the fund was exhausted by payments and contracts covering that amount the board let additional contracts for extras to an amount in excess of $53,000. On February 16, 1931, it passed a resolution reciting that whereas the district "has outstanding and unpaid certain binding and subsisting legal obligations to the amount of $55,000" and no funds with which to pay the same, bonds to that amount dated March 1, 1931, be issued, and "that simultaneously with the issuance of these bonds there be paid and canceled a like amount of binding and subsisting obligations now outstanding." The bonds were issued without submitting the proposition to the voters of the district.

Out of an aggregate of $53,572.33 of indebtedness the W. M. Welsh Manufacturing Company had a claim of $1694.89 for equipment furnished. On April 27, 1931, it instituted suit in the circuit court against "the Grant Community High School District No. 124" for $55,000. A *narr.* with common counts was filed. An attached affidavit of claim in the amount of $53,572.33 recited that the demand was for "goods, wares and merchandise sold and delivered, money lent and advanced, money paid out and expended," without stating to or by whom the goods were sold or the money lent or advanced. On the same day, judgment for $53,572.33 was entered upon the confession of the defendant. On May 8, 1931, the board authorized the payment of the claims out of the proceeds of the $55,000 bond issue. The claims were paid and on May 13, the judgment was satisfied of record.

The validity of the bonds is challenged by appellant on the ground that they are based on illegal and void debts which the board had no authority to contract, and because they were issued without submitting the proposition to the legal voters of the district. Appellee contends there is no evidence of the invalidity of the claims funded by the bonds, and that the bonds were issued pursuant to an act of April 30, 1931, (Cahill's Stat. 1933, chap. 122, par. 446(10), which made an election unnecessary. The first section of that act provides that "where, prior to March 15, 1931, any school district has provided for the issue of bonds for any purpose now authorized by law," and such bonds, including existing indebtedness, exceed two and one-half per cent of the value of taxable property therein, then any such bonds may be executed and delivered to a purchaser notwithstanding such excess. All prior acts and proceedings for the issue of any such bonds are validated, provided no district shall become indebted in excess of any constitutional limitation.

Appellee further relies upon the so-called validating act of May 1, 1933. (Cahill's Stat. 1933, chap. 122, par. 446(13). The pertinent part of section 1 of the act provides: "In all cases where the governing body of any school district * * * has issued bonds for the purpose of funding and paying * * * any legal claims duly audited and allowed by the governing body, with or without an election, and the * * * legal claims so funded, have been paid and canceled, each such * * * funding bond issue is hereby validated and recognized as a valid and binding obligation of the school district issuing the same."

The resolution calling the special election on the question of building a school house and issuing bonds for $72,000 did not limit the cost of the building to that amount. It provides for a building to cost not less than $72,000. Neither the notice of election nor the ballot contained any suggestion that the entire cost was to be covered by the amount of the bond issue. The board was not required to submit to the voters the cost of the building to be erected, and if in its judgment the amount of the bonds authorized to be issued was not sufficient to meet the cost of the building required, the board had the power to levy taxes within the statutory limit for building purposes to make up the difference. (*Hartmann* v. *Pesotum School District*, 325 Ill. 268; *People* v. *Scott*, 300 id. 290; *People* v. *Crear*, 300 id. 611; *People* v. *St. Louis, Alton and Terre Haute Railroad Co.* 230 id. 61; *People* v. *Peoria and Eastern Railway Co.* 216 id. 221; *People* v. *Chicago and Texas Railroad Co.* 223 id. 448.) By the statute then in force (Cahill's Stat. 1929, chap. 122, sec. 189,) the limit of tax levies without an election for building purposes by districts of less than 200,000 population was three-eighths of one per cent of the value of the taxable property in the district. The board levied a tax for building purposes, the amount of which is not shown, but the

$53,572.33 of debts contracted was paid out of the proceeds of the $55,000 bond issue. It cannot be said that any part of the claims was provided for by the levy for building purposes. While a school board may complete an unfinished school building by means of annual tax levies within the statutory limitation from year to year until the building is completed, (*People* v. *Chicago and Texas Railroad Co. supra,*) it does not follow that the board may incur a debt beyond the statutory limit and then attempt to provide for its payment either by tax levies or a bond issue.

Under the act of 1928 (Cahill's Stat. 1933, chap. 120, par. 362(2), school districts with a population of less than 200,000 are prohibited from becoming indebted to an amount in excess of two and one-half per cent of the value of the taxable property in such district without an election. Beyond that limit, counting the $72,000 bond issue but not the obligations to be paid therefrom, the board might not lawfully contract. It seems to be conceded that the statutory limit of two and one-half per cent was exceeded by the incurring of the indebtedness of $53,572.33. It is virtually admitted by the attempt to issue the bonds under the act of April 30, 1931. In the trial court appellee's counsel admitted the assessed value of all taxable property in the district was $2,677,520, which would place the indebtedness far beyond the two and one-half per cent limit prescribed by the law of 1928. Therefore, in whatever amount the claims exceeded that limit they were illegal. Analyzing the terms of the 1931 act, it is readily perceived that the statute would apply where the board anticipated the need of funds for a lawful purpose and provided for a bond issue in advance of incurring any debt beyond the statutory limit. It is equally manifest that the authority to issue bonds in excess of the two and one-half per cent limit, "for any purpose now authorized by law," does not authorize the issue of bonds to pay

claims in excess of the statutory limit. Their payment was not a purpose authorized by law. The $55,000 bond issue was therefore not within the terms of the 1931 act.

There is another reason why that act is not applicable. It merely removed the two and one-half per cent limitation, in cases coming within its terms, as to bonds issued under the act after its passage, pursuant to antecedent proceedings. It does not expressly or by implication purport to authorize the issue of bonds without a vote of the electorate. It does not in any manner deal with that question. The whole scope and purview of the act are confined to the removal of the limitation in amount as to bonds thereafter issued under its provisions.

The remaining question is whether or not the bonds in controversy were validated by the act of May 1, 1933. If the curative statute is otherwise valid, it could, under its terms, be applied in this case only on the theory that the bonds were issued "for the purpose of funding and paying legal claims." Inasmuch as the claims paid were illegal, the statute has no application to bonds issued for their payment. Whether or not the validating act is void as attempting to validate bonds issued in contravention of existing law requiring the proposition to be submitted to a vote is unnecessary to be considered. Neither is it necessary to consider the validity or effect of the judgment entered against the district. It is conceded by all parties that the several claims, and not the judgment, were the basis of the bond issue.

The judgment of the county court is reversed and the cause is remanded, with directions to sustain the objections of appellant.

*Reversed and remanded, with directions.*