(No. 25558.—

THE PEOPLE *ex rel.* Garfield R. Leaf, County Collector, Appellee, *vs.* E. R. ORVIS, Appellant.

*Opinion filed October 11, 1940—Rehearing denied Dec. 4, 1940.*

Shaw, J., specially concurring.

D. T. Smiley, for appellant.

Charles E. Mason, State's Attorney, Okel S. Fuqua, and Langworthy, Stevens & Bartlit, (B. F. Langworthy, of counsel,) for appellee.

Mr. Justice Stone delivered the opinion of the court:

A default judgment was entered on October 2, 1939, in the county court of Lake county, against appellant E. R. Orvis, for delinquent taxes. On October 5, 1939, he filed a motion to vacate the judgment. This motion was denied on the ground of lack of meritorious defense shown, and the defendant appeals. The grounds set out in the motion are that the board of education of Grant Community High School District No. 124, Lake county, Illinois, had no right to levy a tax to pay principal and interest due on a $55,000-

bond issue, since this court had determined, in 1934, in a case in which appellant and others were parties, (*People* v. *Orvis*, 358 Ill. 408,) that the claims upon which the $55,000-bond issue were predicated created a debt in excess of the statutory limit, and so were null and void. The objections urge that thereafter said board of education could not order the tax spread by the county clerk of Lake county. It is also pointed out that since the decision in the *Orvis case* no tax has been levied to collect either principal or interest of the bonds until the year 1938, when the clerk again extended the tax, which he had no right to do.

At the hearing upon appellant's motion counsel for appellee brought to the court's attention the validating act of June 6, 1935, and certified copies of the complaint, answer and judgment entered in the case of the *Ohio Nat. Life Ins. Co.* v. *Board of Education of Grant Community High School District No. 124, County of Lake and State of Illinois,* in the District Court of the United States for the Northern District of Illinois, Eastern Division, which was decided June 30, 1936. This case was a suit by a bond-holder for interest due on certain of these bonds, as evidenced by interest coupons, and a judgment in the case was entered for plaintiff in the sum of $3025. This case will hereinafter be referred to.

Appellant contends, here, that the county court erred in finding that appellant had not sustained his objections submitted with his motion to vacate; that the case of *People* v. *Orvis, supra,* is *res judicata* of the instant case, and the validating act of 1935 is void.

Appellee contends that the decision of this court in *People* v. *Orvis, supra,* does not constitute an adjudication which would prevent validation of the bonds by the legislature; further that the judgment of the District Court of the United States in the case of the *Ohio Nat. Life Ins. Co.* against the high school district is *res judicata* as to the issues in this case, and if this were not so the validating

act of 1935 rendered these bonds legal and, therefore, to be paid by taxation.

Pursuant to a special election held December, 1929, in the Lake county school district No. 124, bonds were issued in the sum of $72,000 to purchase a site and erect a school building. The proceeds of the bond issue were insufficient to complete the building and equipment and on February 16, 1931, the board of education passed a resolution that bonds be issued to the amount of $55,000 to pay the remaining outstanding obligations. These bonds were issued without a vote of the people of the district. Fifty-four thousand dollars of these bonds were sold and all of the indebtedness of the high school district was paid out of the proceeds. The statutory limit of two and one-half per cent of the value of the taxable property in the district, beyond which school districts with a population of less than 200,000 are prohibited by statute from becoming indebted without an election, (Cahill Stat. 1933, chap. 120, par. 362(2),) was exceeded by the issuance of the $55,000 of bonds, the entire amount being in excess of that limitation.

In *People* v. *Orvis, supra,* Orvis objected to taxes levied on his property for the year 1932 to pay a portion of this same $55,000-bond issue. His objections were overruled by the county court and he appealed. The People contended in that case that the bonds were issued pursuant to an act of April 30, 1931, (Cahill Stat. 1933, chap. 122, par. 446(10),) which made an election unnecessary. The first section of said act provides that where, prior to March 15, 1931, any school district has provided for the issue of bonds "for any purpose now authorized by law" and such bonds, including existing indebtedness, exceed two and one-half per cent of the value of taxable property therein, then any such bonds may be executed and delivered to a purchaser notwithstanding such excess.

In the prior *Orvis case* it was pointed out that the claims to pay which the bonds were issued, raised the indebtedness

of the district beyond the two and one-half per cent limit prescribed by statute, and therefore the claims were illegal. It was there held that, by its terms, the 1931 act would apply where the board anticipated the need of funds for a lawful purpose and provided for a bond issue in advance of incurring any debt beyond the statutory limit, but that the authority to issue bonds in excess of the two and one-half per cent limit "for any purpose now authorized by law," did not authorize the issue of bonds to pay claims in excess of the statutory limit; that their payment was not a purpose "now authorized by law," and that the $55,000-bond issue was not within the terms of the 1931 act and was illegal.

Also in the prior *Orvis case* the People relied on the act of May 1, 1933, (Cahill Stat. 1933, chap. 122, par. 446(13),) as validating the bonds. Section 1, so far as pertinent here, provides: "In all cases where the governing body of any school district * * * has issued bonds for the purpose of funding and paying * * *, any legal claims duly audited and allowed by the governing body, with or without an election, and the * * * legal claims so funded, have been paid and canceled, each such * * * funding bond issue is hereby validated and recognized as a valid and binding obligation of the school district issuing the same." This court held, concerning this act, that if it were otherwise valid, it could, under its terms, be applied only to bonds that were issued "for the purpose of funding and paying legal claims," and that inasmuch as the claims paid were illegal, the validating act of 1933 had no application to bonds issued for the payment of such claims.

After the adjudication of this court in the prior *Orvis case,* another so-called validating act was passed in 1935, (Ill. Rev. Stat. 1937, chap. 122, par. 406y,) evidently intended to cover this situation. Appellant argues that it is void. It provides: "Whenever any person, firm or corporation shall have rendered services or furnished ma-

terials to any school district for the corporate purposes of the district and such services or materials shall have been paid for by or out of the proceeds of bonds issued by such school district with or without an election, and the amount of the claims for such services or materials, together with other indebtedness, exceeded in whole or in part two and one-half per cent (2½%) of the assessed value of taxable property of the district at the time such services were rendered or materials furnished, the issuance of such bonds shall be deemed a validation of such claims in so far as said claims, together with other indebtedness, did not exceed five per cent (5%) of such value at the time they were incurred and at the time such bonds were issued. All proceedings had in connection with the issuance of such bonds are hereby validated and such bonds in so far as the same or the proceeds thereof were used to pay such validated claims are hereby declared to be valid and legally binding obligations of the district."

It is settled that the General Assembly may, by statute, validate an irregular or defective exercise of a power where the power already existed and the proceeding sought to be cured was not one of the fundamentals of the power exercised. Conversely, the General Assembly cannot, by a curative act, make a void proceeding valid. (*People* v. *Southern Railway Co.* 367 Ill. 389; *People* v. *Chicago and Eastern Illinois Railway Co.* 365 id. 202; *People* v. *Padley,* 340 id. 314; *People* v. *Chicago, Milwaukee and St. Paul Railway Co.* 321 id. 499; *Maulding* v. *Skillet Fork Drainage District,* 313 id. 216; *Roberts* v. *Eyman,* 304 id. 413.) School districts have only such taxing power as is given by statute. As we have stated, this school district was prohibited by statute from becoming indebted, without an election, beyond two and one-half per cent of the assessed value of the property of the district, and it had no power to issue bonds to pay claims or debts in excess of that limitation. That question was clearly presented in the prior *Orvis case*

and the judgment of this court in that case was that these bonds were invalid because the claims for the payment of which they were issued were invalid, as beyond the power of the district to incur.

The so-called validating act of 1935 was an attempt on the part of the General Assembly to say that the claims against the district, and the bonds issued to pay them, held by this court to be invalid, shall nevertheless be deemed valid. The language is that "the issuance of such bonds shall be deemed a validation of such claims," and declares that the bonds thus issued are valid. There was no attempt to enlarge the powers to create indebtedness against the district, but an outright declaration that invalid claims and bonds issued therefor shall be deemed valid. This was beyond the power of the General Assembly to enact. *Green* v. *Hutsonville School District,* 356 Ill. 216.

Cooley's Constitutional Limitations, seventh edition, page 531, states: "If the thing wanting or which failed to be done, and which constitutes the defect in the proceeding, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law." Also, at pages 135 and 136 of this work, the writer points out: "It is always competent to change an existing law by a declaratory statute; and where the statute is only to operate upon future cases, it is no objection to its validity that it assumes the law to have been in the past what it is now declared that it shall be in the future. But the legislative action cannot be made to retroact upon past controversies, and to reverse decisions which the courts, in the exercise of their undoubted authority, have made; for this would not only be the exercise of judicial power, but it would be the exercise in the most

objectionable and offensive form, since the legislature would, in effect, sit as a court of review to which the parties might appeal when dissatisfied with the rulings of the courts." It is one of the fundamental principles of our government that the legislative power shall be separate from the judicial. If the General Assembly would prescribe a different rule for the future from that which the courts enforce, it must be done by statute applicable in the future, and cannot be done by setting aside final judgments of the courts. Such leaves the law unchanged and has the effect merely of seeking to require that the courts construe it not according to judicial judgment but according to later legislative will.

The case of *Chicago and Eastern Illinois Railroad Co.* v. *People,* 219 Ill. 408, is not unlike this case. There, objection to a tax levy had been overruled by the county court, and on appeal this court reversed the county court and held the tax invalid on the ground of failure to substantially comply with a statutory requirement or limitation on the exercise of a grant of power to levy taxes. It was held that such is not a mere irregularity but renders the tax invalid. (*Chicago and Eastern Illinois Railroad Co.* v. *People,* 213 Ill. 497; *Chicago, Burlington and Quincy Railroad Co.* v. *People* id. 458.) After entry of the judgment of this court and prior to filing of the remanding order in the county court, the General Assembly passed a so-called validating act by which it was declared that the tax involved should be considered legal and valid "anything in the law of this State to the contrary notwithstanding." The county court accordingly overruled the objections to the tax and the cause was again appealed and this court held that the original case was a final determination of the question as to the validity of the levy and that the validating act gave no power to the trial court to enter any other than the judgment directed on remandment.

In the case before us there has been no defect, as to procedure, in the issuance of the bonds or in the allowance of these claims, but the bonds and the claims for which

they were issued were invalid and beyond the power of the school district to incur. This court so held, and under that judgment these bonds and claims were beyond the power of the General Assembly to validate. The tax objected to here is for the purpose of paying these invalid bonds. Appellee contends that in the *Ohio Nat. Life Ins. Co. case,* hereinbefore referred to, the District Court found the bonds were binding obligations of the school district; that its judgment was not appealed from and became final and binding upon appellee district and the taxpayers, under which judgment appellee must levy a tax to pay those bonds; that appellant and other taxpayers are bound by representation in the District Court and that the judgment of that court is *res judicata* concerning the validity of the bonds. It is also said that the prior *Orvis case* and the curative act of 1935 were before the District Court at the time the judgment was entered.

It has been provided in the Federal Judiciary act, since 1789, that "the laws of the several States, except where the constitution, treaties or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply." 1 Stat. at Large 92, chap. 20, sec. 34; Rev. Stat. sec. 721; U. S. C. A. title 28, sec. 725.

When this cause was presented to the Federal District Court the law in this State was that these bonds are illegal. Owing to this fact and the limitations of the Federal Judiciary act, this court cannot recognize the claim of appellees that the decision of the Federal court is controlling here.

We are of the opinion that the so-called validating act of 1935 is invalid, and that the decision in the prior *Orvis case,* that the claims and these bonds issued thereon are invalid, is *res judicata.*

It is said that the bondholders, who were not parties to that suit, are not estopped to urge their claims here. How-

ever that may be, the adjudication of this court that these bonds were invalid is *res judicata* as to that question. This being so, the county court erred in refusing to vacate the judgment and permit the filing of objections by appellant.

The judgment is reversed and the cause remanded to that court, for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded, with directions.*

Mr. JUSTICE SHAW, specially concurring: I agree with the conclusion reached in this opinion but not with all that is said therein.