(No. 27274.—)

THE PEOPLE *ex rel.* W. L. Gowdy, County Collector, Appellee, *vs.* THE BALTIMORE AND OHIO RAILROAD COMPANY, Appellant.

*Opinion filed Nov. 16, 1943—Rehearing denied Jan. 12, 1944.*

KERN, PEARCE & PEARCE, of Carmi, and KRAMER, CAMPBELL, COSTELLO & WIECHERT, of East St. Louis, (MORISON R. WAITE, and WILLIAM A. EGGERS, both of Cincinnati, Ohio, of counsel,) for appellant.

ALBERT W. McCALLISTER, State's Attorney, and ULYS PYLE, both of Carmi, for appellee.

MR. JUSTICE FULTON delivered the opinion of the court:

This is an appeal from an order of the county court of White county, overruling objections filed by appellant to a portion of the hard-road bond taxes for the town of Enfield, extended against its property for the year 1941 and rendering judgment against said appellant therefor. The cause was tried on the appellee's·application for judgment for delinquent taxes for the year 1941 and the appellant's written objections thereto.

In lieu of a report of proceedings, an agreed statement of facts has been filed in which it was stipulated that the application for judgment for delinquent taxes for the year 1941 was duly and regularly filed and that the People of the State of Illinois made a *prima facie* case for judgment and that the appellant did regularly file its objections to said application.

From the agreed statement of facts it appears .that on August 16, 1935, the electors of the town of Enfield, at a special election held for that purpose, voted in favor of issuing $30,000 in bonds for road purposes in accordance with the provisions of section 112 of the Road and Bridge Act. (Ill. Rev. Stat. 1935, chap. 121, par. 120.) By virtue of this election $15,000 of said bonds, dated as of October 1, 1935, were issued and delivered to a purchaser for value on November 16, 1935, and a certificate of

issuance thereof was duly filed with the county clerk. This bond issue is referred to as "Bond Issue No. One."

Also, by virtue of said election, bonds amounting to $15,000 dated as of November 1, 1935, were issued by the highway commissioner in accordance with a resolution adopted by him on November 25, 1935. This bond issue is referred to as "Bond Issue No. Two." A certificate of issuance of said bonds, including a copy of the resolution, was filed with the county clerk on November 25, 1935. Actually, these bonds were not executed and delivered to the purchaser thereof until December 14, 1935. The resolution adopted by the highway commissioner on November 25, 1935, provided in substance as follows:

Section 1 fixed the amount to be borrowed at $15,000. The date of the issuance of bonds was fixed at November 1, 1935, their denomination was fixed at $1,000 each, the bonds being numbered from 1 to 15, inclusive, and it was provided that said bonds should mature in numerical order, $1,000 on December 1 of the years 1937 to 1941, inclusive, and $2,000 on December 1 of the years 1942 to 1946, inclusive, and that the bonds should bear interest at the rate of 5 per cent per annum, payable semi-annually on the first day of June and December of each year, and said interest should be evidenced by coupons attached to said bonds. This section further provided that said bonds be registered in the office of the county clerk.

Section 2 provided for the form of said bonds.

Section 3 provided "That the Commissioner of Highways and the Town Clerk of said Town of Enfield shall execute said bonds as in the resolution provided, as soon after the passage thereof as may be and thereupon shall issue and deliver said bonds to H. C. Speer and Sons Company, Chicago, Illinois, upon receipt of the purchase price agreed upon, the same being not less than the par value of said bonds; and that the contract for the sale or dis-

posal of said bonds to said purchaser be and the same is hereby in all respects ratified and approved."

Section 4 provided for the levy of a direct annual tax to pay the interest on said bonds and to discharge the principal as they became due.

Section 5 provided that if at any time there was not sufficient funds on hand from the foregoing levy made by section 4 to pay principal and interest maturing, that said principal and interest could be paid from the general fund of the town, which fund was to be reimbursed out of the taxes levied under section 4.

Section 6 provided that a register of said issue of bonds should be kept in the office of the county clerk and provided that it was the duty of the county clerk to extend against the property of the town in each year an amount of tax sufficient to pay each series of bonds as it matures.

The resolution also provided for the giving of a bond by the treasurer, and instructions for the payment of principal and interest.

It appears from the stipulation that the assessed valuation of taxable property as last equalized and determined for taxing purposes in said township was $614,960 as of November 16, 1935, and as of December 14, 1935. It further appears that the total debt of the township, including the principal amount of the bond issue known as Bond Issue No. One, as of November 16, 1935, was $15,000 and that the total debt of the township as of December 14, 1935, being the date of the issue and the delivery to the purchaser of the $15,000 bond issue known as Bond Issue No. Two, including the principal amount of the two bond issues, was $30,000.

It further appears that the purchase price of both bond issues was received by the township and that said funds were expended by the officers thereof for the construction and improvement of roads.

It also appears that for the year 1941 taxes for hard-road bonds for the town of Enfield were extended against all taxable property in said town at the rate of $1.23 on each $100 valuation to raise a total of $5,862. Of this sum $3,072 was levied for principal and interest requirements under Bond Issue No. One and $2,450 was levied for principal and interest requirements on Bond Issue No. Two.

The record shows that at the time all bonds in both issues were issued and delivered there was in full force and effect in the State of Illinois "An act to limit the indebtedness of Counties having a population of less than 500,000 and Cities, Townships, School Districts and other municipal corporations having a population of less than 300,000." (Ill. Rev. Stat. 1935, chap. 113, par. 44.) This statute provided that no township having a population of less than 300,000 should become indebted in any manner, for any purpose, to an amount including existing indebtedness in the aggregate exceeding 2½ per cent of the value of the taxable property therein as ascertained by the last assessment for State and county taxes.

The record also shows that on December 10, 1935, House Bill No. 40 was approved, section 1 of which act provided: "In all cases where the voters of any township in this State have heretofore and prior to the time this Act becomes effective, voted in favor of issuing bonds of such township for road purposes, and the amount of such bonds, together with existing indebtedness exceeds in the whole or in part in the aggregate 2½%, but not in excess of the 5% constitutional limitation of indebtedness, all such elections and proceedings shall be and the same are hereby made legal and valid, and any such bonds which have heretofore been sold and delivered to a purchaser, or contract for sale thereof has been made, shall be and the same are hereby made legal and valid binding obligations of such township, notwithstanding any objections

which, except for this Act, could have been made to the legality of such bonds, or such bond elections, or such bond proceedings."

Section 2 of said act provides that since an emergency exists the act should become effective immediately upon its passage. It is admitted that 2½ per cent of the assessed valuation as last equalized was on the date of the issuance of both bond issues the sum of $15,374 and 5 per cent of the assessed valuation as of said dates would be $30,748.

The appellant relies chiefly upon two alleged errors in said order of the county court as follows: (1) the county court erred in overruling appellant's objections to part of the hard-road bond taxes extended for the year 1941; and (2) the validating act of the legislature, dated December 10, 1935, on which the county court based its order and judgment, is unconstitutional and void.

The objectors contend that at the time Bond Issue No. Two was issued the statutory limitation of indebtedness of the town of Enfield was 2½ per cent of the value of the taxable property therein, and that since Bond Issue No. Two made the total indebtedness of the town more than 2½ per cent, the excess indebtedness created by said bond issue is void and that taxes cannot be levied therefor.

The township contends that, although as of the date of the adoption of the resolution for the issuance of said bonds the debt limit was 2½ per cent, by the act of the General Assembly which became law on December 10, 1935, the issuance of the bonds executed and delivered on December 14, 1935, in excess of the 2½ per cent limit was validated.

Much reliance is placed by the appellee for sustaining this tax on the cases of *People ex rel. Larson* v. *Thompson,* 377 Ill. 104; *Austin* v. *Healey,* 376 Ill. 633; and the so-called Curative Act of December 10, 1935. In the *Thompson case* this court held that under section 11 of

the Forestry Act an appropriation ordinance cannot take effect until ten days after its publication. The board of commissioners of a forest preserve district is without power to pass a levy ordinance prior to the expiration of the ten-day period, and an ordinance passed within the ten-day period is void. In that case the appropriation ordinance was published on September 8, 1939. The board of commissioners passed the levy ordinance on September 15, 1939, within the ten-day period and we ·further held that the board was absolutely without power to pass the levy ordinance, and that a validating act cannot cure a lack of authority to act at all.

In the *Austin case* this court held that an election authorizing town road bonds, similar to those involved in this case, created no contractual obligation, and no obligation or indebtedness rests upon the township until the bonds are actually issued and delivered, and that the issuance of such bonds was only subject to the constitutional limit of indebtedness at the time of issuance No question over the levy of a tax similar to the facts in this case was involved.

The general rule has been many times stated by this court to be that a validating act can validate an irregular exercise of power, but it cannot confer jurisdiction where none existed and cannot cure the complete want of authority to act. *People* v. *Thompson,* 377 Ill. 104.

In the present case, at the time of the adoption of the resolution covering the No. Two bond issue, on November 25, 1935, the limitation of indebtedness for the township remained unchanged. In this resolution provision was made for the payment of the bonds and for the levy of a tax providing funds therefor. On the same day the county clerk registered the bonds and extended the tax on his books in obedience to the resolution filed in·his office At the time this action was taken the highway commissioner

attempted to create an indebtedness above the statutory limitation which was wholly unauthorized. A curative act cannot validate a levy void when made and the validity of a tax is to be determined as of the time of the levy. *People* v. *Thompson*, 377 Ill. 104; *People ex rel. Morse* v. *Orvis*, 358 Ill. 408; *People ex rel. Leaf* v. *Orvis*, 374 Ill. 536.

For the reasons advanced, the judgment of the county court of White county is reversed, and the cause is remanded to that court, with directions to sustain the objections of the appellant to the taxes involved in this appeal.

*Reversed and remanded, with directions.*