Jerry BIENERT, Albert Dutcher, James Bauer, Elgin Lemon, Harlan Nelson, Henry Kaiser, James Stark, Willard Hohenthaner, Robert Fejfar, Dawn Remington, Roland Peterson, Plaintiffs and Appellants,

v.

YANKTON SCHOOL DISTRICT, 63-3 in and of Yankton County, South Dakota, by and through its Board of Education, Defendant and Appellee.

18277.

Supreme Court of South Dakota.

Argued May 24, 1993.

Decided Oct. 27, 1993.

C.E. Light, Yankton, for plaintiffs and appellants.

Richard D. Hagerty, Yankton, for defendant and appellee.

Mark Barnett, Atty. Gen., Sherri Sundem Wald, Asst. Atty. Gen., Pierre, for amicus curiae State of SD.

Celia Miner, Steven M. Johnson of Johnson, Heidepriem, Miner & Marlow, Yankton, for amicus curiae Yankton's Excellent Schools.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

Following the December 15, 1992 Special School District Bond Election for Yankton School District 63-3 (hereinafter School District), a group of local taxpayers (hereinafter Bienert) sought an injunction declaring "Question No. 1," concerning the construction of a new high school, to be void and preventing the School District from issuing the related bonds. In its January 27, 1993 Memorandum Opinion and February 23, 1993 Judgment, the trial court dismissed Bienert's request for injunctive relief and further ruled that the bond election statutes were constitutional. By Notice of Appeal filed March 4, 1993, Bienert raises the following issues:

I. Is Bienert entitled to injunctive relief?

II. Did School District fail to comply with SDCL 6-3-4?

III. Are the requirements of SDCL 6-3-4 mandatory or discretionary?

IV. Was the election null and void *ab initio*?

V. Are the provisions of SDCL 6-3-1 through 6-3-8 ambiguous and unenforceable, thus unconstitutional?

We affirm.

## FACTS

During October 1992, School District entered into an agreement with the City of Yankton to jointly finance, construct and operate a new high school/community education center. Per contract, School District agreed to finance its share of the project by issuing general obligation bonds worth $12,040,190. The city would contribute the remainder of the $20 million construction price.

As voter approval of the proposed bond issue was necessary, School District published its notice of election for two successive weeks in the local newspaper beginning November 18, 1992. Following the December 15 election, "Question No. 1" was approved by fewer than 60%, but more than 50% of the voters. Thereafter, School District prepared to issue bonds to raise funds for this project and a second project to remodel and renovate the current high school into a middle school facility. (The remodeling project was approved by the voters under "Question No. 2" and is not being challenged here.) On January 5, 1993, Bienert commenced this action asserting that the election did not meet statutory guidelines for bond elections and sought an injunction to prevent the sale of the bonds.

## DECISION

### 1. *Bienert had a plain, speedy, and adequate remedy at law.*

Bienert asserts that the election was void and, therefore, injunctive relief is proper to prevent the school district from issuing the bonds. As we held in *Sorensen v. Rickman*, 486 N.W.2d 259 (S.D.1992), and *S.D. Board of Regents v. Heege*, 428 N.W.2d 535 (S.D.1988), injunctive relief can only be issued when the party seeking said relief is without a plain, speedy and adequate remedy at law. Although Bienert admits that a plain and adequate remedy existed—contesting the election under SDCL chap. 12–22—he asserts such a remedy "could not provide [Bienert] with the speedy relief necessary to immediately restrain the School District from proceeding to issue general obligation bonds."

Ironically, the exact opposite is true. SDCL 12–22–5 requires an election contest to be commenced within 10 days of the disputed election. Under SDCL 12–22–8, the summons and complaint must be answered within 10 days of service, or less than 10 days if the proceedings are expedited. Instead, Bienert filed his action after 10 days had passed; and by seeking an injunction, he gave School District more time—30 days—to answer. SDCL 15–6–12(a). Bienert's actions confirm that speed was not the utmost concern. An election contest was indeed the "speedy" remedy. Rather than supporting the claim that he is without "remedy at law," Bienert cites *Gooder v. Rudd*, 38 S.D. 197, 160 N.W. 808 (1916); *Klaudt v. City of Munno*, 72 S.D. 1, 28 N.W.2d 876 (1947); and *Hurley v. Coursey*, 64 S.D. 131, 265 N.W. 4 (1936), as authority permitting the use of injunctions to void election results.

In *Gooder*, the appellant seeking injunctive relief to void a special election claimed the petition calling for the election lacked the requisite number of qualified signatures. Deciding if an election could be legally held based upon a defective petition, this Court held, "[W]here the petition filed is insufficient in law ... such officials are without any jurisdiction to hold such an election; and such election, if held, together with all proceedings had thereunder or pursuant thereto,

are wholly void." Years later, we reaffirmed this decision in *Klaudt* holding, "Failure to file a valid petition rendered the election void[.]" This Court also permitted equitable relief in *Hurley,* holding that judges cannot be elected to a court that had not been legally established.

These three precedents all adhere to the premise that equitable relief is proper in prohibiting enforcement of an election result where the election itself could not legally have been held. When a petition is invalid, no authority or jurisdiction exists to hold an election. The same holds true for electing people to positions that do not legally exist. Bienert's argument that this election should be voided due to alleged faulty notice and ballot does not rise to the same level as an invalid petition because here, a legal basis for holding the election existed. Instanter, Bienert asks this Court to ignore the fact that he purposely avoided a plain and adequate remedy at law simply because he did not find the remedy speedy enough to suit him. As the remedy of an election contest under SDCL chap. 12–22 readily existed, we affirm the trial court's denial of the injunction.

### 2. *Notice and ballot were proper.*

Although we have affirmed the trial court due to Bienert's failure to apply the appropriate remedy, we further note that the election would stand on other grounds as well.

SDCL 6–3–1 to 6–3–8, inclusive, concern the joining of political subdivisions, such as a public school district and a city government, to construct public buildings. Specifically, SDCL 6–3–3 provides:

> The governing body of each participating political subdivision may appropriate money or may also issue the general obligation bonds of the subdivision, *as provided in chapter 6–8B for the authorization, issuance and sale of bonds, for the payment of its share of the cost of the building or improvement*; provided, that no bonds may be issued until provision has been made by each of the other participating subdivisions for the payment of their shares of the cost and *a majority of all*

*voters voting on the bond issue authorize it.* (Emphasis added.)

Thus, in tracking the embodiment of this statute, the reader must refer to SDCL 6–8B for further details. Under SDCL 6–8B–2, one is informed that "[u]nless otherwise provided," the bond election requires 60% of the voters for approval. As SDCL 6–3–3 plainly "otherwise provides," only a simple majority above fifty percent is required.

Digesting the referred Chapter 6–8B, we note that SDCL 6–8B–4 states in pertinent part:

Notice shall state the maximum amount of bonds to be issued, the purpose for which bonds are issued, and other matters the governing board determines to be necessary.

According to the evidence and Bienerts' advocacy, this is exactly what is stated in the published notice. Additionally, SDCL 6–8B–5 requires that the ballots "shall have printed thereon substantially the same language as is included in the notice of the election ..." Once again, Bienert does not dispute that such was done, rather he claims that the notice and ballot were to be designed under the auspices of SDCL 6–3–4 instead. Because the notice and ballot did not include the requirements of SDCL 6–3–4, he deems this election void.

■ We disagree. Regarding Bienerts' argument, we note that SDCL 6–3–3 immediately refers the reader to SDCL 6–8B; *SDCL 6–3–4 is not mentioned whatsoever.* Terms of a statute relating to a particular subject will prevail over general terms of another statute. *Nelson v. School Bd. of Hill City,* 459 N.W.2d 451, 454 (S.D.1990); *Meyerink v. Northwestern Pub. Serv. Co.,* 391 N.W.2d 180, 184 (S.D.1986). As SDCL 6–3–3 directs the reader to the particular area of SDCL 6–8B, we will not disenfranchise voters because election officials chose a specifically prescribed applicable statute over another statute to which they were not directed. *See Christensen v. Devany,* 500 N.W.2d 213, 214 (S.D.1993); *Abbott v. Hunhoff,* 491 N.W.2d 450, 452 (S.D.1992).

Bienert further asserts that he was not aware that only a 50% majority vote, rather than the 60% majority vote mentioned in SDCL 6–8B–2, was utilized in this election. He indicates he learned this after the votes had been counted and canvassed. Furthermore, he actually complains that his inability to file a timely suit was due to the fact that there was no notice that the election would only require a 50% majority vote. We point out that had SDCL 6–3–4 been utilized as he requests, the notice still would not have contained information about the percentage vote required.

During oral arguments before this Court, School District's attorney conceded that, "for purposes of this proceeding," the notice and ballot may have been defective under SDCL 6–3–4. Notwithstanding this concession, we find that the School District, even if inadvertently, followed the notice and ballot requirements of SDCL 6–3–3 and SDCL chap. 6–8B.

3. *The election was cured by subsequent legislation.*

■ During the 1993 legislative session, Senate Bill 293 (SB 293) amended SDCL 6–8–3 to read:

In all such cases as described in § 6–8–2 the bonds so issued and all proceedings taken before January 1, 1993, for the issuance of such bonds and for the levy and appropriation of taxes, assessments, or revenues for the payment thereof and all covenants heretofore made for the security of such bonds *are hereby declared to be valid and legal, notwithstanding any defect or irregularity, other than constitutional defects,* in any of said bonds including, but without limitation of the generality hereof, any defect or irregularity *in any election, notice of election, publication,* or petition required by law, or in any of the obligations issued before January 1, 1993, which are funded or refunded, by bonds heretofore issued or authorized to be issued, including special assessment proceedings and special assessment certificates or bonds issued in lieu thereof; and *all such bonds issued pursuant to said proceedings heretofore taken, shall be legal, valid and binding obligations of the political subdivision issuing the same, notwithstanding any defects or irregulari-*

*ties, other than actions prohibited by the Constitution or omissions or actions required by the Constitution,* in the proceedings taken for the issuance of such bonds. (Emphasis supplied.)

Thus, bonds and bond elections prior to January 1, 1993 are henceforth valid and legal, notwithstanding any defect or irregularity, other than constitutional defects. Whereas the election in question was held prior to the January 1 deadline, SDCL 6–8–3 stands to cure the problems alleged by Bienert.

Curative legislation concerning the issuance of bonds was upheld by *Utter v. Franklin,* 172 U.S. 416, 19 S.Ct. 183, 43 L.Ed. 498 (1899). *Utter* has been followed by several jurisdictions of last resort. *Accord Worley v. Idleman,* 285 Ill. 214, 120 N.E. 472 (1918); *State ex rel. Skyllingstad v. Gunn,* 92 Minn. 436, 100 N.W. 97 (1904); *Weber v. City of Helena,* 89 Mont. 109, 297 P. 455 (1931). In *Utter,* the United States Supreme Court held that bonds adjudged void due to lack of power to issue them is immaterial when they have been subsequently made valid by an act of Congress. Such legislation is by no means unknown to South Dakota or Yankton County. Prior to our statehood, in *National Bank v. County of Yankton,* 101 U.S. 129, 25 L.Ed. 1046 (1880), the Legislative Assembly of Dakota Territory passed an act permitting organized counties and townships to vote for aid to any railroad and to provide for payment of same. Voters in Yankton County later approved sale of $200,-000 in bonds for a railroad venture. However, County alleged that, despite subsequent legislation, no valid law existed authorizing the issue of the bonds, and as a consequence, County was not bound for payment of either principal or interest. The District Court of Yankton County and the Supreme Court of Dakota Territory agreed. In reversing the underlying case of *Treadway v. Schnauber,* 1 Dak. 236, 46 N.W. 464 (1875), the U.S. Supreme Court held that subsequent legislation can "cure" or make a void act valid. Thus,

the issuance of bonds was permissible through curative legislation in 1880. Nothing has changed to prevent us from concluding the same in 1993.

4. *The statutes are constitutional.*

 Enactments of the Legislature should be upheld unless they are clearly and unmistakenly unconstitutional. *Frawley Ranches, Inc. v. Lasher,* 270 N.W.2d 366 (S.D.1978). As Bienert's constitutional arguments are without merit and were later waived during oral arguments, we have no basis for declaring SDCL 6–3–1 through 6–3–8 unconstitutional.

Affirmed.

MILLER, C.J., and AMUNDSON, J., concur.

WUEST, J., concurs specially.

SABERS, J., dissents.

WUEST, Justice (concurring specially).

I do not agree that plaintiffs had a plain, speedy and adequate remedy at law. See my dissent in *Sorenson v. Rickman,* 486 N.W.2d 259, 262 (S.D.1992). It is my opinion, however, the election was validated by the enactment of a Senate Bill (S.B. 293) of the 1993 legislative session which amended SDCL 6–8–3.

SABERS, Justice (dissenting).

Counsel for the School District conceded during oral argument that the notice and ballot were defective under SDCL 6–3–4.* SDCL 6–3–4 provides:

> The resolution or ordinance, notice and ballot as provided in chapter 6–8B shall include the estimated total cost of the building or improvement, the names of the other participating subdivisions, and shall refer to the agreement on file in the office of the recording officer.

---

* The trial court agreed, stating in its Memorandum Opinion that "[i]t is this Court's opinion that based upon the record in this matter that the school district in giving notice and in the ballot, may not have complied with the provisions of SDCL 6–3–4 as to stating that the city of Yankton

was a participating governmental agency, the total estimated cost of the project, and the agreement between the city of Yankton and the Yankton School District as to the construction and operation and participation in this joint venture."

Under the unambiguous terms of this statute, the notice and ballot *shall* include the estimated total cost, the names of participating subdivisions, and refer to the agreement on file. Yet, contrary to these mandatory terms, the notice and ballot in this case did not include the "estimated total cost of the building," the "names of the other" participants or "refer to the agreement." Therefore, the election was defective and void.

According to the majority writing, however, because "[t]erms of a statute relating to a particular subject will prevail over general terms of another statute," and SDCL 6–3–3 immediately refers the reader to SDCL 6–8B without mentioning 6–3–4 whatsoever, the notice and ballot were proper. I disagree. SDCL 6–3–4 is the statute which relates to a particular subject and should prevail over the general terms found in SDCL 6–8B–4 and 6–8B–5.

It is not necessary that SDCL 6–3–3 mention SDCL 6–3–4. Chapter 6–3 is entitled Joint County–Municipal–School District Buildings. SDCL 6–3–4 defines further the requirements of the resolution, ordinance, notice, and ballot as found in chapter 6–8B when, as in this case, two or more political subdivisions agree to jointly acquire a public building for their common use. To ignore SDCL 6–3–4 because "SDCL 6–3–3 immediately refers the reader to SDCL 6–8B" is to ignore the intent of the legislature in enacting SDCL 6–3–4, as well as the entire chapter. As counsel for the School District conceded for purposes of argument, the notice and ballot were defective under SDCL 6–3–4.

Despite these defects, the majority writing concludes that the defective notice and ballot were cured by the subsequent amendment of SDCL 6–8–3. I disagree. I do not accept the argument that defects in an election can be cured by the Legislature while the case is on appeal. *See generally People ex rel. Leaf*

*v. Orvis,* 374 Ill. 536, 30 N.E.2d 28, 30 (1940) (citations omitted), *cert. denied,* 312 U.S. 705, 61 S.Ct. 827, 85 L.Ed. 1138 (1941). ("[T]he General Assembly cannot, by a curative act, make a void proceeding valid."). Whether the goal of the election is progress over stagnation or good over bad is immaterial—the end does not justify the means.

> [T]he legislative action cannot be made to retroact upon past controversies, and to reverse decisions which the courts, in the exercise of their undoubted authority, have made; for this would not only be the exercise of judicial power, but it would be the exercise in the most objectionable and offensive form, since the legislature would, in effect, sit as a court of review to which the parties might appeal when dissatisfied with the rulings of the courts. It is one of the fundamental principles of our government that the legislative power shall be separate from the judicial. If the General Assembly would prescribe a different rule for the future from that which the courts enforce, it must be done by statute applicable in the future, and cannot be done by setting aside final judgments of the courts. Such leaves the law unchanged and has the effect merely of seeking to require that the courts construe it not according to judicial judgment but according to later legislative will.

*Id.* at 31 (citation omitted). If we permit the results of this defective election to stand, we will be furthering the old saying:

> No one's life, liberty or property is safe while the legislature is in session.